EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | |
|---|---|
| | 2026 TSPR 27 |
| Wanda Vázquez Garced | 217 DPR ___ |

Número del Caso: TS-8,709

Fecha: 16 de marzo de 2026

Representantes legales de la promovida:

    Lcdo. José A. Andréu Fuentes
    Lcdo. Edgardo Rivera García

Materia: Conducta Profesional – Suspensión inmediata e indefinida del ejercicio de la abogacía y la notaría.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*:

Wanda Vázquez Garced          TS-8709          Conducta
                                               Profesional

El Juez Asociado Señor Feliberti Cintrón emitió la Opinión del Tribunal.

En San Juan, Puerto Rico, a 16 de marzo de 2026.

En el ejercicio de nuestra facultad inherente para reglamentar la profesión legal en Puerto Rico, nos corresponde determinar si la Lcda. Wanda Vázquez Garced (licenciada Vázquez Garced) debe ser objeto de medidas disciplinarias por parte de este Foro. Esto, a raíz de su declaración de culpabilidad ante el Tribunal de Distrito Federal para el Distrito de Puerto Rico (Tribunal Federal), por un delito menos grave relacionado con el financiamiento de la campaña política primarista que llevó a cabo para su elección a la gobernación en las Elecciones

Generales de Puerto Rico de 2020,[1] sin que recayera una *Sentencia* condenatoria, y tras haber recibido y aceptado un perdón total e incondicional otorgado por el Presidente de Estados Unidos, Donald J. Trump, cuyo efecto jurídico resultó en la desestimación del proceso penal que se ventilaba en su contra. Por las razones que expondremos a continuación, determinamos que **sí** procede la imposición de una sanción disciplinaria. Veamos.

## I

La licenciada Vázquez Garced fue admitida al ejercicio de la abogacía el 26 de junio de 1987 y juramentó como notaria el 28 de enero de 1988. El 24 de mayo de 1989 cesó funciones notariales al ser nombrada a un cargo público incompatible con dicho ejercicio. Transcurridos casi 35 años de la cesación, solicitó su readmisión a la notaría el 1 de marzo de 2024. Luego de cumplir los requisitos correspondientes, el 4 de abril de 2024 autorizamos su readmisión a la práctica de la notaría.

Con el propósito de contextualizar el asunto que nos ocupa, es necesario señalar que la licenciada Vázquez Garced asumió el cargo de gobernadora de Puerto Rico el 7 de agosto de 2019 y desempeñó sus funciones hasta el 1 de enero de 2021.[2] El 4 de agosto de 2022, las autoridades federales

---

[1]    En la jurisdicción federal se considera un delito menos grave aquel "punishable by imprisonment for one year or less." Regla 7(a)(2) de Procedimiento Criminal Federal. Fed. Rules Crim. Proc., Rule 7(a)(2), 18 USC App.

[2]    Véase National Governors Association, *Former Governors – Puerto Rico*, https://www.nga.org/governor/wanda-vazquez/ (última visita, 3 de marzo de 2026). La Lcda. Wanda Vázquez Garced (licenciada Vázquez Garced) llegó a la gobernación de Puerto Rico como la primera gobernadora no electa al

la arrestaron por presuntos hechos vinculados a la campaña política primarista que llevó a cabo en el 2020 para su elección como gobernadora de Puerto Rico. La licenciada Vázquez Garced fue acusada por un Gran Jurado federal (*Indictment*) en el Tribunal Federal, por los delitos de conspiración (*conspiracy*), soborno asociado con programas federales (*federal program bribery*) y fraude electrónico de servicios honestos (*honest services wire fraud*).[3]

El 27 de agosto de 2025, luego de alcanzar un acuerdo de culpabilidad (*Plea Agreement*) con la Fiscalía Federal (Fiscalía),[4] la licenciada Vázquez Garced se declaró culpable de un delito menos grave por aceptar una promesa de aportación política de una persona de nacionalidad extranjera (*contribution by a foreign national*), en conexión con su candidatura primarista para el cargo de gobernadora en las Elecciones Generales de 2020, en violación al 52 USC secs. 30121 y 30109(d)(1)(A)(ii), así como al 18 USC sec. 2.[5] En particular, dichas disposiciones establecen lo siguiente:

---

asumir el cargo por orden de sucesión mediante disposición estatutaria, tras los eventos ocurridos en Puerto Rico en el verano de 2019 que culminaron en la renuncia del entonces gobernador electo de Puerto Rico. Véase el Art. 1 de la Ley Núm. 7 de 24 de julio de 1952, según enmendada, conocida como *Ley para Proveer el Orden de Sucesión y Sustitución para el Cargo de Gobernador*, 3 LPRA sec. 8; y Senado de PR v. ELA, 203 DPR 62 (2019).

[3]   *Indictment*, Entrada Núm. 3 del caso United States v. Vázquez-Garced, *et al.*, Caso Núm. 3:22-cr-00342 (SCC) (Caso 22-cr-342 (SCC)), del sistema *Public Access to Court Electronic Records* (PACER), págs. 1, 8, 28-29.

[4]   *Plea Agreement*, Entrada Núm. 6 del caso United States v. Vázquez Garced, Caso Núm. 3:25-cr-00296 (SCC) (Caso 25-cr-296 (SCC)) de PACER, págs. 1-12.

[5]   Cabe señalar que la Fiscalía Federal presentó la acusación por el cargo menos grave el 30 junio de 2025. *Information*, Entrada Núm. 1 del Caso 25-cr-296 (SCC) de PACER, pág. 1.

**52 USC sec. 30121 – Contribution and donations by foreign nationals**

**"(a) Prohibition**

It shall be unlawful for—

(1) a foreign national, directly or indirectly, to make--

    (A) a contribution or donation of money or other thing of value, or to make an express or implied promise to make a contribution or donation, in connection with a Federal, State, or local election;

    (B) a contribution or donation to a committee of a political party; or

    (C) an expenditure, independent expenditure, or disbursement for an electioneering communication (within the meaning of section 30104(f)(3) of this title); or

(2) a person to solicit, accept, or receive a contribution or donation described in subparagraph (A) or (B) of paragraph (1) from a foreign national.

**(b) "Foreign national" defined**

As used in this section, the term "foreign national" means—

(1) a foreign principal, as such term is defined by section 611(b) of Title 22, except that the term "foreign national" shall not include any individual who is a citizen of the United States; or

(2) an individual who is not a citizen of the United States or a national of the United States (as defined in section 1101(a)(22) of Title 8) and who is not lawfully admitted for permanent residence, as defined by section 1101(a)(20) of Title 8."

**52 USC sec. 30109 – Enforcement**

"(d) Penalties; defenses; mitigation of offenses

(1)(A) Any person who knowingly and willfully commits a violation of any provision of this Act which involves the making, receiving, or reporting of any contribution, donation, or expenditure—

. . . . . . . .

(ii) aggregating $2,000 or more (but less than $25,000) during a calendar year <u>shall be fined under such title, or imprisoned for not more than 1 year, or both</u>."  (Subrayado suplido).

**18 USC sec. 2 - Principal**

"(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

Del acuerdo de aceptación de culpabilidad se desprende que la licenciada Vázquez Garced se declararía culpable de un cargo en el pliego acusatorio en el que se le imputaba la comisión de lo siguiente:

1. **Cargos de los cuales la Acusada se declarará culpable**

   La Acusada acuerda que se declarará culpable de un cargo en el Pliego Acusatorio que imputa la comisión de lo siguiente:

   Primer Cargo:

   Allí para marzo de 2020 hasta alrededor de junio de 2020, Wanda Vázquez Garced, **en complicidad con otros, a sabiendas y con intención** aceptó una promesa de aportación política por parte de una persona de nacionalidad extranjera, en conexión con su candidatura primarista por el Partido Nuevo Progresista para el cargo de Gobernador(a) en las elecciones generales de 2020, habiendo acumulado más de $2,000 pero no más de $25,000 durante el año natural. Todo ello en violación al 52 [USC] [sec.] 30121 (Contribution by Foreign National) and [sec.] 30109(d)(1)(A)(ii) (Penalties for violations) and 18 [USC] [sec.] 2. (Traducción nuestra y negrilla y subrayado suplido).**6**

   ---

   **6**  *Plea Agreement*, Entrada Núm. 6 del Caso 25-cr-296 (SCC)) de PACER, págs. 1-2.  En particular, su texto en inglés lee como sigue:

   "**1. Charges to which Defendant will Plead Guilty**

   Defendant agrees to plead guilty to a one count Information charging the following:

   Count One:

   From on or about March 2020 to on or about June 2020, Wanda V[á]zquez Garced, **aided and abetted by others, did knowingly and willfully** accept a promise of a political contribution from a foreign national, in connection with her candidacy in the New Progressive Party's primary

Asimismo, la licenciada Vázquez Garced estipuló y aceptó los hechos que se detallan:

**ESTIPULACIÓN DE HECHOS**

Junto con la presentación del Acuerdo de Aceptación de Culpabilidad que se acompaña en este caso, la Acusada, Wanda Vázquez Garced, **admite que es culpable de lo que se le imputa** en el Pliego Acusatorio **y admite** lo siguiente:

Allí para marzo de 2020 hasta alrededor de junio de 2020, la acusada, Wanda Vázquez Garced, fue candidata primarista por el Partido Nuevo Progresista para el cargo de Gobernador(a) de Puerto Rico en las elecciones generales de 2020. El acusado, Julio Herrera Velutini, de nacionalidad extranjera, prometió contribuir dinero y otras cosas de valor para apoyar la campaña de la señora Vázquez. Las partes estipulan para propósitos de las guías para la imposición de la pena que el valor de la aportación prometida fue de más de $15,000, pero no en exceso de $25,000. La acusada, Vázquez Garced, no aceptó la aportación política para su enriquecimiento personal, sino a nombre de su comité político en apoyo a su candidatura. **Vázquez Garced tenía conocimiento de que las personas de nacionalidad extranjera no pueden contribuir dinero u otras cosas de valor y actuó a sabiendas y con intención al aceptar las aportaciones prometidas.**

De este asunto haberse dilucidado en juicio, los Estados Unidos hubiera presentado prueba en la forma de declaraciones de testigos, así como prueba física y documental, que hubiera probado más allá de toda duda razonable que la acusada, Vázquez Garced, en efecto, a sabiendas y con intención aceptó aportaciones políticas de parte de una persona de nacionalidad extranjera. (Traducción nuestra y negrilla y subrayado suplido).**7**

---

election to select its nominee for Governor of Puerto Rico in 2020 general election, aggregating more than $2,000, but less than $25,000, during the calendar year. All in violation of 52 U.S.C. §§ 30121 (Contribution by Foreign National) and § 30109(d)(1)(A)(ii) (Penalties for violations) and 18 U.S.C. § 2." (Negrilla y subrayado suplido).

**7**  Íd., pág. 11.  Cabe mencionar que su texto en inglés es el siguiente:

"**STIPULATION OF FACTS**

In conjunction with the submission of the accompanying Plea Agreement in this case, Defendant Wanda V[á]zquez-Garced

Finalmente, la licenciada Vázquez Garced también acordó las siguientes cláusulas:

**13. Estipulación de Hechos**

La Estipulación de Hechos que se acompaña y que lleva la firma de la Acusada se hace formar parte de este Acuerdo de Aceptación de Culpabilidad. La Acusada adopta la Estipulación de Hechos y acepta que los hechos que allí se incluyen son fieles y exactos en todos los aspectos. **La Acusada acuerda y acepta que, de haberse dilucidado el asunto en juicio, los Estados Unidos hubieran probado esos hechos más allá de toda duda razonable**. (Negrilla y subrayado suplido).**[8]**

. . . . . . . .

**CONOCIMIENTO DE DERECHOS**

He consultado con mi representante legal y comprendo plenamente todos mis derechos con

---

**admits that she is guilty as charged** in the Information **and admits** to the following:

From on or about March 2020 to on or about June 2020, Defendant Wanda V[á]zquez-Garced was candidate in the New Progressive Party's primary election to select its nominee for Governor of Puerto Rico in 2020 general election. Defendant Julio Herrera-Velutini, a foreign national, promised to contribute money and other things of value to support V[á]zquez's campaign. The parties stipulate for purposes of the sentencing guidelines that the value of the promised contribution was more than $15,000 but did not exceed $25,000. Defendant V[á]zquez-Garced did not accept the political contribution for the personal monetary gain; but for her political committee to support her candidacy. **V[á]zquez-Garced was aware that foreign nationals could not contribute money or other things of value but acted knowingly and willfully to accept the promised contributions**.

Had this matter proceeded to trial, the United States would have presented evidence through the testimony of witnesses, as well as physical and documentary evidence, which would have proven beyond a reasonable doubt that Defendant V[á]zquez-Garced did knowingly and willfully accept political contributions from a foreign national." (Negrilla y subrayado suplido).

**8**   Íd., pág. 6. Véase el texto en inglés, el cual lee de la manera siguiente:

**13. "Stipulation of Facts**

The accompanying Stipulation of Facts signed by Defendant is hereby Incorporated into this Plea Agreement. Defendant adopts the Stipulation of Facts and agrees that the facts therein are accurate in every respect. **Defendant agrees and accepts that had the matter proceeded to trial, the United States would have proven those facts beyond a reasonable doubt**." (Negrilla y subrayado suplido).

relación a los cargos presentados en mi contra. Además, he consultado con mi abogado y conozco completamente mis derechos con relación a las disposiciones de las Guías que aplican en mi caso. He leído este Acuerdo de Aceptación de Culpabilidad y he revisado cuidadosamente cada una de sus partes con mi abogado. Mi representante legal me ha traducido el Acuerdo de Aceptación de Culpabilidad al español y no tengo ninguna duda en cuanto al contenido del acuerdo. **Entiendo este acuerdo a cabalidad y lo suscribo voluntariamente**. (Negrilla y subrayado suplido).[9]

Luego de varios trámites procesales, pero antes de que el Tribunal Federal dictara *Sentencia* condenatoria, el Presidente de los Estados Unidos, Donald J. Trump, le concedió a la licenciada Vázquez Garced -y ésta aceptó- un perdón total e incondicional, tanto por los cargos por los cuales fue acusada en el 2022[10] como por el delito menos grave por el que se declaró culpable.[11] Consecuentemente, el 27 de enero de 2026 el Tribunal Federal emitió *Sentencias de desestimación* en los casos United States v. Vázquez-Garced,

---

[9]   Íd., pág. 10.  En particular, su texto en inglés lee como sigue:

    "**UNDERSTANDING OF RIGHTS**

    I have consulted with counsel and fully understand all of my rights as to the charges pending against me. Further, I have consulted with my attorney and fully understand my rights as to the provisions of the Guidelines that may apply in my case.  I have read this Plea Agreement and carefully reviewed every part of it with my attorney. My counsel has translated the Plea Agreement to me in the Spanish language and I have no doubts as to the contents of the agreement. **I fully understand this agreement and voluntarily agree to it**."  (Negrilla y subrayado suplido).

[10]   *United States' Notice of Executive Grants of Clemency for Defendants and Request for Certification of Acceptance by Defendants,* Entrada Núm. 895, Anejo 895-1 del Caso 22-cr-342 (SCC) de PACER, págs. 1-2; *Notice of Presidential Full and Unconditional Pardon*, Entrada Núm. 897 del Caso 22-cr-342(SCC) de PACER, págs. 1-2.  Cabe señalar que, una vez el Tribunal de Distrito Federal para el Distrito de Puerto Rico dictara *Sentencia* por el delito menos grave por el cual la licenciada Vázquez Garced se declaró culpable, el mencionado caso habría sido desestimado.  Véase, además, *Plea Agreement*, Entrada Núm. 6 del Caso 25-cr-296 (SCC) de PACER, pág. 9.

[11]   *Notice of Full and Unconditional Presidential Pardon*, Entrada Núm. 36 y Anejo 36-1 del Caso 25-cr-296 (SCC) de PACER, págs. 1-2.

*et al.*, Caso Núm. 3:22-cr-00342 (SCC),[12] y <u>United States v. Vázquez Garced</u>, Caso Núm. 3:25-cr-00296 (SCC).[13]

El 27 y 29 de enero de 2026, el Tribunal Federal remitió a este Foro copia de las referidas *Sentencias de desestimación*. Así las cosas, el 4 de febrero de 2026, este Tribunal emitió una *Resolución* en la que le concedió término a la licenciada Vázquez Garced para mostrar causa por la cual no debía ser disciplinada por este Foro, tras haberse declarado culpable de la comisión del delito antes indicado.

El 3 de marzo de 2026, la licenciada Vázquez Garced compareció ante este Tribunal. En esencia, detalló su extenso historial profesional, las incidencias procesales de los casos criminales ventilados en su contra ante el Tribunal Federal, así como el daño emocional, psicológico y económico experimentado tanto por ella como por su familia.

En relación al delito menos grave por el cual se declaró culpable mediante alegación preacordada expuso, entre otros aspectos, que su conducta se limitó estrictamente a aceptar una promesa de contribución a su campaña política y no en beneficio personal pecuniario. La licenciada Vázquez Garced argumentó, además, que los elementos del delito menos grave en cuestión no demuestran conducta deshonrosa ni de depravación moral, toda vez que no están presente los elementos de fraude y engaño. Asimismo, destacó que dicho

---

[12] *Judgment of Dismissal*, Entrada Núm. 902 del Caso 22-cr-342 (SCC) de PACER, pág. 1.

[13] *Judgment of Dismissal*, Entrada Núm. 39 del Caso 25-cr-296 (SCC) de PACER, pág. 1.

delito tampoco ocurrió en el desempeño de la profesión de la abogacía ni en su función pública, sino como "una ciudadana en un proceso político". Así mismo, la licenciada Vázquez Garced arguye que, de un análisis de los elementos del delito, se puede destacar que no demuestra una intención fraudulenta, ni implica corrupción gubernamental. Por el contrario, se trata de un delito de naturaleza "estatutaria" que no conlleva depravación moral.

Al abordar el estándar de "willfully" o a sabiendas en el derecho penal federal, expresa que el Tribunal Supremo de Estados Unidos lo ha definido como un conocimiento general de que la conducta es ilegal, no como conocimiento técnico específico del estatuto. En ese contexto, citó el manual oficial del Departamento de Justicia de Estados Unidos, *Federal Prosecution of Election Offenses* (8th ed., 2017), que indica que, según el *Federal Election Campaign Act*, en la aludida modalidad de delito, el requisito penal es de conocimiento de <u>ilegalidad</u> y no de intención de defraudar. Cónsono con ello, la licenciada Vázquez Garced sostiene que la naturaleza de la conducta tipificada es regulatoria, lo que implica que no es un delito constitutivo de corrupción gubernamental. Es decir, la conducta objeto de la alegación preacordada está proscrita por disposición estatutaria específica, lo que significa que no implica una conducta inherentemente inmoral o deshonesta. Finalmente, expresó que el perdón ejecutivo le fue concedido antes del acto de dictarse sentencia, por lo cual para ella implica que nunca recayó una convicción penal. Así pues, la licenciada Vázquez

Garced le solicita a este Tribunal que, considerando los antecedentes fácticos en su justa dimensión, determine que están presentes todos los fundamentos y atenuantes para declinar ejercer su facultad disciplinaria y proceder al "archivo de este asunto sin trámite ulterior". **Adelantamos que no nos convence y declinamos su invitación.**

Con este escenario en mente, y al amparo de nuestro poder inherente de reglamentar el ejercicio de la profesión legal, pasemos a discutir el derecho aplicable.

**II**

**A. El poder inherente del Tribunal Supremo de regular la profesión legal**

Como parte del principio de separación de poderes que emana de la Sec. 2 del Art. I de la Constitución de Puerto Rico, Const. PR, LPRA, Tomo 1, se crea un sistema de pesos y contrapesos para asegurar un balance de poder entre las tres ramas de gobierno en la Isla, entiéndase las Ramas Ejecutiva, Legislativa y Judicial. Con el fin de garantizar dicho balance, la Constitución de Puerto Rico delegó unas facultades específicas a cada una de esas ramas. En conformidad a esta delegación de poderes, cada rama de gobierno ha invocado ciertos poderes inherentes a sus facultades y funciones. *In re* Pellot Córdova y otro, 204 DPR 814, 824 (2020).

En particular, nuestra Constitución deposita en el Poder Judicial la facultad de regular todo lo relativo a la administración del sistema de justicia. Al respecto, este Tribunal consecuentemente ha reiterado que intrínseco a dicha

facultad constitucional está el poder o autoridad inherente de regular la profesión legal en Puerto Rico. Íd. Véase, además, *In re* Pérez Pérez II, 2026 TSPR 3, págs. 3-4 esc. 2, 217 DPR __ (2026).

**B. El proceso disciplinario en contra de un abogado**

**i.**

En esa dirección, la Sec. 9 de la Ley de 11 de marzo de 1909 (Ley de 1909), 4 LPRA sec. 735, constituye uno de los mecanismos mediante los cuales este Tribunal puede ejercer su facultad disciplinaria. Dicha disposición establece un procedimiento de separación sumaria de la profesión legal en aquellos casos en los que recaiga un dictamen de culpabilidad en contra de un abogado. *In re* Carrasco Castillo, 2025 TSPR 31, 215 DPR ___ (2025); *In re* Peluzzo Perotín, 195 DPR 323, 327 (2016) (citando a S. Steidel Figueroa, *Ética y responsabilidad disciplinaria del abogado*, San Juan, Pubs. JTS, 2010, pág. 356). En consecuencia, el mecanismo allí dispuesto torna innecesario el trámite disciplinario ordinario previsto en la Regla 14 del Reglamento de este Tribunal, 4 LPRA Ap. XXI-B, R. 14. *In re* Carrasco Castillo, *supra*; *In re* Velilla Reyes, 200 DPR 248, 252 (2018); *In re* Peluzzo Perotín, *supra*, págs. 327-328. En lo pertinente, la aludida disposición expone que:

> [e]l abogado que fuere culpable de engaño, conducta inmoral (*malpractice*), delito grave (*felony*) o delito menos grave (*misdemeanor*), en conexión con el ejercicio de su profesión o que fuere culpable de cualquier delito que implicare depravación moral, podrá ser suspendido o destituido de su profesión por el Tribunal Supremo de Puerto Rico. La persona que siendo abogado fuere convicta de un delito grave cometido en

conexión con la práctica de su profesión o que implique depravación moral, cesará convicta que fuere, de ser abogado o de ser competente para la práctica de su profesión. **A la presentación de una copia certificada de la sentencia dictada al Tribunal Supremo, el nombre de la persona convicta será borrado, por orden del Tribunal, del registro de abogados.** Al ser revocada dicha sentencia, o mediante el perdón del Presidente de los Estados Unidos o del Gobernador de Puerto Rico, el Tribunal Supremo estará facultad[o] para dejar sin efecto o modificar la orden de suspensión. (Negrilla suplida). Sec. 9 de la Ley de 1909, *supra*.[14]

Es sabido que las funciones inherentes al profesional del Derecho como oficial del Tribunal provocan que un abogado convicto según lo dispuesto en la Sec. 9 de la Ley de 1909, *supra*, no pueda descargar sus deberes éticos profesionales. *In re* Peluzzo Perotín, *supra*, pág. 328; *In re* Zúñiga López, 177 DPR 385, 389 (2009). Por consiguiente, cuando un abogado se declara culpable de un delito relacionado con el ejercicio de la profesión legal, y cuyos hechos implican depravación moral[15] y falta de honradez, procede su separación de la

---

[14] Al evaluar la aplicación de la Sec. 9 de la Ley de 11 de marzo de 1909 (Ley de 1909), 4 LPRA sec. 735, en el caso *In re* Peña Peña, 153 DPR 642, 649 (2001), este Tribunal sostuvo que:

[l]a Asamblea Legislativa claramente indicó que una suspensión de las funciones de un abogado, al amparo de este estatuto, procede si éste fue convicto de un delito grave. El querellado de epígrafe nunca fue convicto del delito grave que originalmente se le imputó, sino que presentó alegación de culpabilidad por un delito menos grave. El estatuto señala que, en estas circunstancias, sólo procede la suspensión si el delito fue cometido en relación con sus funciones como abogado. En este contexto, tampoco le aplica esta ley al querellado, pues su conducta ilegal fue cometida mientras se desempeñada como Senador del Estado Libre Asociado y no como parte del ejercicio de la práctica de la abogacía. Véase *Colegio de Abogados de P.R. v. Barney, supra*. Tampoco podemos concluir que omisión en el cumplimiento del deber bajo el Art. 214, *supra*, del Código Penal, constituye, *per se*, un delito menos grave que implique depravación moral.

[15] En cuanto a la depravación moral, hemos expresado que ésta consiste en hacer algo contrario a la justicia, la honradez, los buenos principios o la moral. *In re* Santamaría Torres, 208 DPR 383, 386 (2021); *In re* Colón

profesión. *In re* Catalá Suárez, 213 DPR 131, 135 (2023); *In re* Castro Ward, 202 DPR 168, 170 (2019); *In re* Vázquez Torres II, 182 DPR 853, 855 (2011).

No obstante, este Tribunal ha reiterado que en nuestra jurisdicción la determinación de separar a un abogado del ejercicio de la profesión constituye una facultad inherente de este Foro. *In re* De la Texera Barnes, 165 DPR 526, 532 (2005). En el ejercicio de dicha prerrogativa, podemos ordenar la separación de un abogado por razones distintas a aquellas que la Asamblea Legislativa haya decretado expresamente por ley. Íd. En otras palabras, la causa para sancionar a un abogado no tiene que ser necesariamente de origen legislativo. Íd. Asimismo, hemos resuelto que esta facultad puede ejercerse aun cuando las actuaciones del abogado no estén relacionadas con el ejercicio de su profesión, si se demuestra que su conducta lo hace indigno de pertenecer a este Foro. Íd. Basta con que las actuaciones del abogado menoscaben sus condiciones morales. Íd., págs. 532-533.

---

Ledée, 190 DPR 51, 55 (2014). Cabe señalar que, para fines disciplinarios, la depravación moral no se configura meramente por la comisión de un delito grave o menos grave ni por el simple quebrantamiento de un estatuto penal. *In re* Toro Goyco, 170 DPR 432, 439 (2007). Más bien, el análisis jurisprudencial de la depravación moral se centra en la naturaleza deshonesta del delito y sus implicaciones morales. Íd., *supra*, pág. 438.

Así pues, la depravación o torpeza moral es "un estado o condición del individuo, compuesto por una deficiencia inherente de su sentido moral y la rectitud; en que la persona ha dejado de preocuparse por el respeto y la seguridad de la vida humana y todo lo que hace es esencialmente malo, doloso, fraudulento, inmoral, vil en su naturaleza y dañino en sus consecuencias". *In re* Falcón López, 189 DPR 689, 695 (2013) (citando a *In re* Rivera Cintrón, 114 DPR 481, 491 (1983)).

**ii.**

En esa línea, la Sec. 12 de la Ley de 1909, 4 LPRA sec. 737, reconoce la facultad de este Tribunal para desaforar o suspender a un abogado por mala conducta en el ejercicio de la profesión o por cualquier otra causa que justifique su suspensión o destitución. Véase, además, Steidel Figueroa, *op. cit.*, pág. 415. Aun cuando la aludida disposición enuncia normas de carácter general, la Regla 14 del Reglamento del Tribunal Supremo, *supra*, precisa el procedimiento disciplinario aplicable a abogados y notarios, al establecer el trámite procesal que deberá seguirse cuando se presente una queja escrita y juramentada ante este Foro o cualquiera de sus jueces respecto a su conducta. Íd.

Sobre este particular, el juez Sigfrido Steidel Figueroa explica que el proceso disciplinario contra un miembro de la profesión legal consta de dos (2) etapas: la investigativa y la adversativa disciplinaria. Steidel Figueroa, *op. cit.*, pág. 413. La etapa investigativa, por lo general, se activa tras la presentación de una queja en la que se imputa al abogado una violación a los principios éticos que rigen la profesión legal. Íd. No obstante, dicho proceso también puede iniciar con un referido de carácter general o individualizado. Íd.[16]

---

[16] Sobre el referido general o individualizado, el juez Steidel Figueroa indica que cuando el referido es de carácter general, no existe necesariamente una investigación centrada sobre una persona, sino más bien sobre unos eventos. S. Steidel Figueroa, *Ética para juristas: Ética del abogado y responsabilidad disciplinaria*, San Juan, Ed. SITUM, 2016, pág. 413.

Ahora bien, este Tribunal ha expresado que, en virtud de su poder inherente para regular el ejercicio de la abogacía, posee amplia discreción para seleccionar el procedimiento apropiado para disciplinar a un abogado, ya que está liberado de toda rutina procesal sin más limitación que la garantía de un debido proceso de ley. *In re* Reichard Hernández, 180 DPR 604, 614 (2011). Asimismo, hemos advertido que este Foro puede iniciar *motu proprio* una acción disciplinaria contra un miembro de la profesión. Íd., pág. 620. De igual modo, no prescindimos de la presentación de una queja para que la conducta de un abogado sea objeto de nuestra atención. Íd.

A modo ilustrativo, en *In re* Reichard Hernández, *supra*, **el proceso disciplinario comenzó cuando el propio abogado notificó a este Tribunal, mediante carta dirigida al Juez Presidente, que se había iniciado un procedimiento administrativo en su contra ante la Junta Examinadora de Florida.** Dicho procedimiento surgió porque omitió información relevante tanto en su solicitud ante la Junta Examinadora de Florida como en la de Puerto Rico, relacionada con ciertas denuncias en su contra por conducir bajo los efectos del alcohol y por negarse a firmar un documento que certificaba su negativa a realizarse una prueba de aliento, cargos que fueron archivados posteriormente. **Ante esta situación, el Tribunal emitió una orden para que el abogado mostrara causa por la cual no debía ser suspendido de inmediato del ejercicio de la abogacía, sin trámite ulterior.** Tras su comparecencia y la evaluación del asunto, se le suspendió del ejercicio de la abogacía por seis (6) meses.

Este Tribunal concluyó que el abogado había incumplido los requisitos de la Junta Examinadora al omitir en la Declaración Informativa su arresto en Florida, conducta que generaba dudas sobre su honestidad y probidad moral.[17] Véase, también, Steidel Figueroa, *op. cit.*, págs. 413-414.

## C. Los cánones de ética profesional[18]

La facultad disciplinaria de este Foro tiene como propósito asegurar que los profesionales del Derecho reflejen, mediante su conducta, los valores y principios deontológicos depurados en los cánones de ética profesional. *In re* Pellot Córdova y otro, *supra*, pág. 825. Como hemos reiterado, el objetivo de la función disciplinaria de este Tribunal no es castigar al abogado, sino proteger a la comunidad y a la propia profesión legal. Íd.; *In re* Rivera Rodríguez, 202 DPR 1026, 1053 (2019); *In re* Huertas Soto, 195 DPR 234, 240 (2016); *In re* García Aguirre, 175 DPR 433, 441 (2009). Así, la obligatoriedad de los postulados éticos recogidos en los cánones o reglas de ética profesional está garantizada precisamente por la autoridad de sancionar que tiene este Tribunal. *In re* Pellot Córdova y otro, *supra*, pág. 826.

---

[17] En *In re* Belén Trujillo, 128 DPR 949, 959 (1991), resolvimos que "este Tribunal tiene poder inherente para investigar y determinar si la conducta específica de una persona antes de ser abogado puede ser considerada para removerlo como tal, cuando adviene en conocimiento de ello una vez es abogado". (Bastardillas en el original omitidas).

[18] En vista de que la conducta objeto del presente caso ocurrió bajo la vigencia de los Cánones del Código de Ética Profesional, 4 LPRA Ap. IX (derogado), la evaluaremos a la luz de los principios allí esbozados.

Cabe destacar que el Canon 38 del Código de Ética Profesional (Canon 38), 4 LPRA Ap. IX, C. 38 (derogado), establece los valores principales que todo abogado debe observar en el desempeño de su gestión profesional y en su vida privada, a saber, el honor y la dignidad. *In re* Maldonado de Jesús, 208 DPR 601, 617 (2022); *In re* Raffucci Caro, 206 DPR 589, 611 (2021); *In re* Villalona Viera, 206 DPR 360, 375-376 (2021); *In re* Reyes Coreano, 190 DPR 739, 756-757 (2014); *In re* Gordon Menéndez, 183 DPR 628, 642 (2011).

En otras palabras, el canon exige que el abogado se conduzca de manera que exalte la dignidad y el honor de su profesión, evitando toda conducta impropia en su vida profesional y personal, tanto en la realidad como en la apariencia. *In re* García Vega, 189 DPR 741, 757 (2013). Como hemos reiterado en innumerables ocasiones, los abogados son el espejo en el que se refleja la imagen de la profesión legal, por lo cual deben actuar con el más escrupuloso sentido de responsabilidad que impone la función social que ejercen. *In re* Maldonado de Jesús, *supra*, págs. 617-618.

En esa línea, todo abogado debe desempeñarse con dignidad y honor, y aunque ello conlleve sacrificios personales, debe conducirse de forma digna y honorablemente, tanto en la vida privada como en el desempeño de su profesión. *In re* Reyes Coreano, *supra*, pág. 757. Este deber responde a la confianza depositada en el abogado como miembro de la profesión legal. Íd.

Por consiguiente, la conducta imputada a un abogado como violación al Canon 38, *supra*, será aquella que lo haga verdaderamente indigno de pertenecer a este Tribunal. Íd., págs. 757-758. Para determinarlo, debe evaluarse si dicha conducta afecta realmente las condiciones morales del abogado. Íd., pág. 758.

## D. La clemencia ejecutiva en Estados Unidos y Puerto Rico, y sus efectos

### 1. Estados Unidos

En el ámbito federal, el Art. II, Sec. 2, Cl. 1 de la Constitución de Estados Unidos concede al presidente el poder total para suspender la ejecución de sentencias y conceder indultos por delitos cometidos en contra de Estados Unidos, excepto en casos de juicio político (residenciamiento o *impeachment*). Pueblo v. Arlequín Vélez, 204 DPR 117, 132 (2020). Específicamente, dicha disposición constitucional establece lo siguiente:

> "The President shall […] have Power to grant Reprieves and Pardons for Offenses against the United States, except in Cases of Impeachment." USCA Const., Art. II, Sec. 2, Cl. 1.

En conformidad a lo reiterado por el Tribunal Supremo de Estados Unidos, la norma prevaleciente dispone que la clemencia ejecutiva o perdón es un acto de gracia que emana del poder para ejecutar las leyes del cual está investido el presidente de Estados Unidos y por medio del cual se exime al beneficiario de cumplir la pena impuesta por un delito cometido. Pueblo v. Arlequín Vélez, *supra*, pág. 132 (citando a United States v. Wilson, 32 US 150, 160 (1833)). Asimismo, conviene señalar que en la esfera federal el poder para

otorgar una clemencia ejecutiva o perdón es amplio e incluye la autoridad para otorgarlo sujeto al cumplimiento de ciertos requisitos. Pueblo v. Arlequín Vélez, *supra*, pág. 132 (citando a *Ex parte*: William Wells, 59 US 307, 313-314 (1855)).

El también llamado "perdón presidencial" (*presidential pardon*) permite al presidente conceder u otorgar diversas formas para eximir de responsabilidad penal. Entre las más comunes se encuentran: (1) el perdón total o absoluto (para individuos); (2) la amnistía (para grupo de personas), y (3) la conmutación.[19] En particular, el perdón total o absoluto (*full pardon* o *absolute pardon*) libera al infractor del castigo o pena y restablece sus derechos civiles sin reservas.[20] Además, el perdón puede concederse en cualquier momento antes de la presentación de cargos criminales, antes de la convicción o luego de ésta,[21] pero se entiende que para que éste sea efectivo debe ser aceptado o rechazado.[22]

En *Ex parte* Garland, 71 US 333, 342 (1866), el Tribunal Supremo federal expuso que el indulto absoluto absuelve al infractor de todas las consecuencias, ya sean directas o

---

[19] Véase Congressional Research Service, Presidential Pardons: *Overview and Selected Legal Issues*, pág. 4, en https://www.congress.gov/crs_external_products/R/PDF/R46179/R46179.2.pdf (última visita, 3 de marzo de 2026).

[20] Íd.

[21] Íd. Para referencia, véase, además, *Ex parte* Garland, 71 US 333, 380 (1866) ("The power … may be exercised at any time after [an offense's] commission, either before legal proceedings are taken, or during their pendency, or after conviction and judgment.").

[22] Véase Congressional Research Service, Presidential Pardons: *Overview and Selected Legal Issues*, pág. 4, en https://www.congress.gov/crs_external_products/R/PDF/R46179/R46179.2.pdf (última visita, 3 de marzo de 2026).

colaterales, de los delitos cometidos y, por consiguiente, de la condena, por lo que queda liberado de cualquier castigo en el ámbito penal. Pueblo v. Arlequín Vélez, *supra*, pág. 136. Véase, además, O.E. Resumil de Sanfilippo, *Derecho procesal penal*, New Hampshire, Butterworth Legal Publishers, 1993, T. 2, Sec. 24.5, págs. 210-211.

## 2. Puerto Rico

Por su parte, en el ámbito local, el Art. IV, Sec. 4, de la Constitución de Puerto Rico también otorga al gobernador el poder de conceder indultos. En lo pertinente, la referida disposición constitucional dispone que entre las atribuciones que tendrá el gobernador está la facultad de "[s]uspender la ejecución de sentencia en casos criminales, conceder indultos, conmutar penas y condonar total o parcialmente multas y confiscaciones por delitos cometidos en violación de las leyes de Puerto Rico[,] [excepto que dicha] facultad no se extiende a procesos de residencia". Art. IV, Sec. 4, Const. PR, LPRA, Tomo 1, ed. 2023, pág. 424.

Este Foro ha expresado que la facultad de otorgar clemencias ejecutivas es una prerrogativa exclusiva del Poder Ejecutivo, que surge de la ley fundamental del Estado, y a la cual accede el acusado, no como parte de derecho alguno que el ordenamiento jurídico vigente le reconozca, sino mediante la concesión de una gracia otorgada por el gobernador. Pueblo v. Arlequín Vélez, *supra*, pág. 134 (citando a Reynolds v. Jefe Penitenciaría, 91 DPR 303, 313 (1964)); Pueblo v. Albizu, 77 DPR 888, 893 (1955); Emanuelli v. Tribl. de Distrito, 74 DPR 541, 548 (1953).

En el 1953, resolvimos <u>Emanuelli v. Tribl. de Distrito</u>, *supra*. Allí señalamos que "[e]l indulto borra para siempre la convicción del delito cometido, quedando de ahí en adelante el indultado tan limpio de ella como si nunca hubiera sido convicto". <u>Íd.</u>, pág. 548. Más adelante, en el 1955, atendimos <u>Pueblo v. Albizu</u>, *supra*, en el cual expusimos que el gobernador podrá ejercitar la clemencia ejecutiva "concediendo el indulto en forma total y absoluta, o en forma condicionada, […] no teniendo otra limitación […] para imponer condiciones que la de que éstas no vayan contra la ley, la moral, o sean imposibles de cumplir". (Citas omitidas). <u>Íd.</u>, pág. 893. A su vez, indicamos que "[c]uando un indulto está sujeto al cumplimiento de una condición previa, ésta debe cumplirse, para que el indulto adquiera plenitud jurídica, dentro del término fijado en el mismo -o dentro de un término razonable si no se hubiere éste fijado […]". (Citas omitidas). <u>Íd.</u> De igual manera, planteamos que "[c]uando [un indulto] está sujeto al cumplimiento de una condición subsiguiente, [éste] adquiere plenitud jurídica tan pronto es aceptado, pero estando latente la condición, el incumplimiento de ésta lo expone a la revocación". (Citas omitidas). <u>Íd.</u>, págs. 893-894.

Por otro lado, el Código Penal de Puerto Rico de 2012 (Código Penal), Ley Núm. 146-2012, según enmendada, 33 LPRA sec. 5001 *et seq.*, establece que el indulto u otra acción de clemencia ejecutiva constituyen causas de extinción de la **acción penal** (Art. 86, inciso (b), del Código Penal, 33 LPRA sec. 5131), así como de la pena (Art. 91, inciso (b),

del Código Penal, 33 LPRA sec. 5136).   A su vez, la Regla 64(g) de Procedimiento Criminal, 34 LPRA Ap. II, R. 64(g), dispone como fundamento para la desestimación de la acusación o la denuncia que el acusado haya sido indultado del delito que se le imputa.   No obstante, las referidas disposiciones legales no establecen claramente cuáles son los efectos de la concesión o aceptación del indulto o clemencia ejecutiva. Pueblo v. Arlequín Vélez, *supra*, pág. 140.

A manera de resumen, referente a los efectos de una clemencia ejecutiva, validamos la regla que dispone que los indultos absolutos e incondicionales, una vez concedidos y sin necesidad de que sean aceptados, absuelven al infractor de todas las consecuencias directas o colaterales; extinguen la acción penal en su contra; constituyen fundamento suficiente para la desestimación de la acusación o denuncia; borran la condena como si nunca hubiera existido, y lo liberan de cualquier castigo en el ámbito penal.   Íd., pág. 141. Véanse, además, *Ex parte* Garland, *supra*; Emanuelli v. Tribl. de Distrito, *supra*, pág. 548; Arts. 86 y 91 del Código Penal, *supra*; Regla 64(g) de Procedimiento Criminal, *supra*.

Mientras, los indultos condicionales adquieren su plenitud jurídica cuando el acusado o convicto los acepta y no desde su concesión.   Claro está, los efectos jurídicos de la sentencia se mantienen en suspenso mientras se cumpla fielmente con las limitaciones impuestas, por lo que en caso de que se infringiera alguna de éstas, entonces podrá revocarse el indulto y, en consecuencia, reactivarse todos los efectos de la sentencia dictada.   Pueblo v. Arlequín

*Vélez, supra,* pág. 141. Véanse, además, <u>Pueblo v. Albizu</u>, *supra*; Resumil de Sanfilippo, *op. cit.*, pág. 211.

Respecto al tema del indulto, el profesor Luis Mariano Negrón Portillo expone que "[a] pesar de que el indulto borra la convicción del acusado, **<u>la concesión de éste no tiene la facultad de borrar los actos cometidos, a los fines de determinar la suspensión o desaforo, cuando éste es abogado</u>**". (Negrilla y subrayado suplido). L.M. Negrón Portillo, *Trece lecciones sobre Ética y Responsabilidad Profesional*, 6.ª ed. rev., San Juan, Ed. SITUM, 2022, pág. 154 (citando a <u>*In re* Silva Iglecia</u>, *infra*). Añade que ello "significa que el ejercicio de la jurisdicción disciplinaria del Tribunal Supremo rebasa y es irrespectivo del indulto o perdón del poder ejecutivo a un abogado convicto de un delito". <u>Íd.</u>

Por su parte, el juez Steidel Figueroa plantea que el indulto de la pena que otorgue el gobernador de Puerto Rico no priva a este Foro de la facultad para ejercer su jurisdicción disciplinaria al amparo del procedimiento sumario que establece la Sec. 9 de la Ley de 1909, *supra*. No obstante, puede considerarlo para denegar ejercer su jurisdicción, en caso de que mediante esa forma se contribuya a los fines rehabilitadores del indulto. Steidel Figueroa, *op. cit.*, pág. 429.

**E. Los precedentes sobre indultos emitidos por el Tribunal Supremo de Puerto Rico**

En nuestra jurisdicción, conviene repasar cuatro (4) casos que forman parte de la jurisprudencia que aborda el tema de los indultos en Puerto Rico. Veamos.

### 1. *In re* Casablanca, 30 DPR 399 (1922)

Este caso se dio en el contexto de un aspirante o candidato a la admisión al ejercicio de la abogacía en Puerto Rico. Específicamente, este Foro proveyó *No Ha Lugar* a la solicitud de admisión y el Sr. Justo A. Casablanca solicitó reconsideración.

Al considerar su petición, este Tribunal advino en conocimiento de que el candidato fue convicto y cumplió condena por el delito grave de falsificación, y que el gobernador de Puerto Rico le otorgó un perdón completo e incondicional en cuanto al delito y la pena, y así se le restituyeron sus derechos civiles y privilegios. No obstante, mientras la solicitud de admisión estaba siendo evaluada por la Comisión de Reputación de Aspirantes al Ejercicio de la Abogacía (Comisión), se tuvo conocimiento de que el señor Casablanca había sido convicto nuevamente por otro delito grave y había apelado su sentencia. Luego de un tiempo, dicha apelación fue denegada y la Comisión envió a este Tribunal una certificación de buena conducta moral. Referente a ese otro delito grave, fue declarado culpable, sentenciado a pena de cárcel -la cual cumplió- e indultado.

Finalmente, proveímos *No Ha Lugar* a la petición de reconsideración presentada por el señor Casablanca. Allí enfatizamos que aun prescindiendo de las condenas y que fue indultado por el gobernador, aún quedaban los hechos y éstos no reflejaban que estuviera en condiciones de ejercer la profesión legal.

### 2. *In re* Varona Pacheco, 115 DPR 701 (1984)

En este caso el abogado fue desaforado por este Tribunal en 1950,[23] tras ser sentenciado en el Tribunal Federal por el delito de conspirar para comprar, recibir, transferir y pasar billetes falsificados.  El abogado cumplió las sentencias criminales en 1956.  Posteriormente, en 1965, el entonces presidente Lyndon B. Johnson le concedió un indulto completo e incondicional.  Desde entonces solicitó sin éxito su reinstalación al ejercicio de la abogacía.  No fue hasta 1983 que presentó una nueva solicitud de reinstalación, la cual fue referida al Procurador General y a la Comisión, cuyos informes fueron favorables.  Así, 34 años después de su desaforo, fue reinstalado en la profesión.

### 3. *In re* Rodríguez Zayas, 151 DPR 532 (2000) (Resolución)

El presente caso se desarrolló en el contexto de una querella presentada por la Oficina del Procurador General en contra del juez Gilberto Rodríguez Zayas (juez Rodríguez Zayas) por infringir, entre otros, el Código de Ética Judicial y el Reglamento del Sistema de Personal de la Rama Judicial.

Por hechos relacionados con el cobro de dinero por oficiar matrimonios en horas laborables en el tribunal y la posterior conducta destemplada mostrada por el juez, la Comisión de Disciplina y de Separación del Servicio por Razón de Salud de Jueces o Juezas (Comisión) imputó al juez Rodríguez Zayas violaciones a varios cánones de ética judicial, disposiciones

---

[23]  Véase *In re* Varona Pacheco, 71 DPR 411 (1950).

estatutarias y reglamentarias aplicables a las actuaciones de los jueces en Puerto Rico.  A raíz de esto, la Comisión refirió el caso a la Oficina del Procurador General para la formulación de querella.  Como consecuencia de esto, dicha Oficina refirió el asunto a la División de Investigaciones y Procesamiento Criminal del Departamento de Justicia de Puerto Rico para que se evaluara la presentación de cargos criminales en contra del juez Rodríguez Zayas.

Así las cosas, un Fiscal Especial Independiente (FEI) comenzó un proceso criminal en contra del referido juez, lo que concluyó con veredictos de culpabilidad en contra de éste por delitos relacionados con retención y destrucción de documentos públicos, y soborno en su modalidad de haber exigido el pago y cobrado dinero para realizar un acto regular de su cargo (celebrar matrimonios durante horas laborables).

Más adelante, en la fecha en que fue sentenciado por tales delitos, el juez Rodríguez Zayas renunció a su cargo y fue indultado por el gobernador en relación con todos los delitos por los cuales resultó convicto.  En vista de lo anterior, las sentencias dictadas quedaron sin efecto.  En el procedimiento disciplinario que se había paralizado mientras se esperaba por el resultado de la acción penal, este Foro expresó lo siguiente:

> Debe de quedar claro que el indulto concedido por el señor Gobernador en este caso no priva a este Tribunal de su jurisdicción disciplinaria sobre el licenciado Rodríguez Zayas.  Tampoco su renuncia al cargo de Juez de Distrito nos privó de dicha facultad.  No obstante, a pesar de estar conscientes de las graves faltas imputadas a dicho abogado en los dos procedimientos disciplinarios iniciados en su contra, actuaciones en las cuales

incurrió en sus funciones como Juez de Distrito a cuyo cargo ha renunciado; y considerando además, la circunstancia específica de que las sentencias dictadas en su contra nunca se convirtieron en firmes por resultar académico apelar en virtud del indulto de que fuera objeto el querellado por parte del señor Gobernador; y por entender que se cumplen mejor los objetivos rehabilitadores perseguidos por el referido indulto, otorgando de este modo nuestra deferencia a la autoridad constitucional del Gobernador de Puerto Rico, quien concediera dicho perdón después de considerar todos los factores presentes en el caso de marras, se declina el ejercicio de nuestra jurisdicción disciplinaria en este asunto. *In re* Rodríguez Zayas, *supra*, págs. 542-543.

Finalmente, este Foro no ejerció su jurisdicción disciplinaria, y decretamos la desestimación y archivo de la querella presentada.

### 4. *In re* Silva Iglecia, 162 DPR 105 (2004)

Este caso surgió en el escenario de una querella sobre conducta profesional presentada por la Oficina del Procurador General en contra del Lcdo. Rolando Silva Iglecia (licenciado Silva Iglecia), por éste haber sido declarado culpable de cuatro (4) cargos menos graves en un procedimiento de naturaleza criminal.

Los hechos se originaron en el 1990 cuando el licenciado Silva Iglecia ocupaba un cargo público en el Senado de Puerto Rico. A raíz de una auditoría de la Oficina del Contralor de Puerto Rico relacionada sobre las operaciones fiscales del mencionado cuerpo legislativo, se designó un FEI para que investigara las actuaciones del licenciado Silva Iglecia. Esta auditoría cubrió todas las operaciones fiscales sobre el reclutamiento y la administración del personal asignado. Dicha auditoría reflejó que el querellado, en su

función de senador, utilizó para su beneficio personal los trabajos y servicios pagados por el Gobierno de Puerto Rico para realizar trabajos y servicios relacionados a su práctica privada de la abogacía y su negocio de bienes raíces.

Así pues, el FEI presentó cuatro (4) cargos de carácter grave. Como parte del procesamiento criminal, el licenciado Silva Iglecia realizó una alegación preacordada mediante la cual se reclasificaron los delitos y se declararía culpable de cuatro (4) cargos por infracción al Art. 214 del derogado Código Penal. Además, restituiría al erario público la suma de $40 mil en concepto de sueldos pagados y/o gastos incurridos por el FEI en la tramitación de los casos criminales. A su vez, cumpliría tres (3) meses de cárcel por cada uno de los cuatro (4) cargos a cumplirse de forma consecutiva, un año en total, en la libre comunidad bajo el régimen de sentencia suspendida.

Ante este escenario, el licenciado Silva Iglecia se declaró culpable y fue sentenciado a cumplir cuatro (4) penas de tres (3) meses, de forma consecutiva, bajo el régimen de sentencia suspendida. Luego de tres (3) años de impuesta la sentencia, el entonces gobernador de Puerto Rico le concedió un indulto total y absoluto.

Previo al indulto, se había comenzado el proceso disciplinario y la Oficina del Procurador General presentó una querella en contra del licenciado Silva Iglecia. Posteriormente, la Comisionada Especial asignada a atender el asunto recomendó que, a tenor de la doctrina pautada en *In re* Rodríguez Zayas, *supra*, procedía decretar la

desestimación y el archivo de la querella. Cónsono con dicha recomendación, este Tribunal decretó el archivo del caso expresando lo siguiente:

> Desde hoy le hacemos claro a la clase togada que el ejercicio de nuestra jurisdicción disciplinaria rebasa y es irrespectivo del indulto o perdón del Poder Ejecutivo a un abogado convicto de un delito. Basta con que la conducta del abogado en su condición de juez, legislador o en cualquier otra actividad, irrespectivo del delito que resulte convicto, sea incompatible con los cánones del Código de Ética Profesional que rigen la conducta de los miembros de la clase togada, para que este Tribunal ejerza su jurisdicción disciplinaria. _In re_ Silva Iglecia, _supra_, pág. 122.

A la luz de la normativa antes esbozada, procedemos a disponer del presente asunto disciplinario.

### III

No cabe duda de que la licenciada Vázquez Garced se declaró culpable de un delito menos grave ante el Tribunal Federal, tras alcanzar un acuerdo con la Fiscalía. Este hecho es incuestionable. Ahora bien, el perdón presidencial tornó académico el que el Tribunal Federal emitiera una _Sentencia_ condenatoria, pues las consecuencias de la pena a ser impuesta quedaron sin efecto. Como resultado, este Foro debe evaluar y determinar si procede disciplinar la conducta de la licenciada Vázquez Garced conforme al Derecho expuesto.

Sabido es que este Foro posee la facultad de iniciar, _motu proprio_, una acción disciplinaria contra un abogado cuando lo considere meritorio. Asimismo, este Tribunal tiene plena discreción para determinar el procedimiento disciplinario más adecuado, sin estar sujeto a rutinas

procesales específicas, siempre y cuando se respete el debido proceso de ley.

Habiendo concedido término a la licenciada Vázquez Garced para exponer las razones por las cuales no debía ser disciplinada por este Tribunal, tras haberse declarado culpable de la comisión del delito en cuestión, y contando con el beneficio de su comparecencia, evaluemos si los hechos por los cuales se declaró culpable ante el Tribunal Federal contravienen los principios éticos que rigen la profesión legal.

Como indicáramos, para marzo de 2020 hasta alrededor de junio de 2020, la licenciada Vázquez Garced, **en complicidad con otros, a sabiendas y con intención**, aceptó una promesa de aportación política por parte de una persona de nacionalidad extranjera, en conexión con su candidatura primarista para el cargo de gobernadora en las Elecciones Generales de 2020. Según se desprende de los hechos estipulados en el acuerdo de culpabilidad, **suscrito por la licenciada Vázquez Garced, su representante legal y la Fiscalía**, una persona de nacionalidad extranjera prometió contribuir dinero y otras cosas de valor para apoyar su campaña política. Aunque la licenciada Vázquez Garced **no** aceptó la aportación política para su enriquecimiento personal, **sí** lo hizo a nombre de su comité político en respaldo a su candidatura. Añádase que ésta tenía conocimiento de que personas de nacionalidad extranjera no podían contribuir dinero u otras cosas de valor, pero actuó **a sabiendas y con intención** al aceptar las aportaciones prometidas. Por último, la licenciada Vázquez

Garced también aceptó que, del asunto haberse dilucidado en juicio, el Gobierno de Estados Unidos hubiera presentado prueba en la forma de declaraciones de testigos, así como prueba física y documental, que hubiera probado más allá de toda duda razonable que ésta, **a sabiendas y con intención**, aceptó aportaciones políticas de parte de una persona de nacionalidad extranjera.

Con estos hechos en mente, y a luz del derecho aplicable, concluimos que la conducta desplegada por la licenciada Vázquez Garced es contraria al Canon 38, *supra*. Nótese que, conforme a los hechos **admitidos** por ella, aceptó la aportación de una persona extranjera con el propósito de beneficiar su campaña política primarista, **a sabiendas** de que tal actuación era ilegal. Al actuar de esta manera, se apartó del deber ético de exaltar el honor y la dignidad de la profesión legal. De igual forma, el delito de financiamiento de campañas políticas por el cual se declaró culpable mientras ejercía sus funciones como gobernadora, menoscaba gravemente la confianza de la ciudadanía en los procesos electorales, así como la integridad y credibilidad que deben caracterizar a la profesión legal.

Y es que nos encontramos ante un caso en el que la conducta deshonrosa de la abogada, ocurrida mientras se encontraba en funciones como gobernadora, vulnera las normas de conducta profesional que deben observar celosamente todos los abogados lacerando, además, la confianza del Pueblo en los funcionarios públicos y en los procesos electorales democráticos. Como bien lo hemos expresado, "la condición de

ser sólo los licenciados los que pueden practicar la abogacía en Puerto Rico hace que la clase togada disfrute de ciertos privilegios. Esta posición privilegiada en nuestra sociedad le impone al abogado la obligación de mantener su imagen sin reproche legal o moral, irrespectivamente de la función que realice". *In re* Peña Peña, 153 DPR 642, 659, (2001). Sin duda, la conducta desplegada por la licenciada Vázquez Garced amerita la imposición de una sanción.

Ahora bien, al realizar la tarea de fijar una sanción disciplinaria debemos considerar: (1) el historial del abogado; (2) su reputación; (3) si constituye su primera falta; (4) si se trata de una conducta aislada; (5) la aceptación de la falta y su sincero arrepentimiento; (6) el ánimo de lucro que medió en la actuación; (7) el resarcimiento al cliente, y cualquier otro factor pertinente, sea atenuante o agravante. *In re* Rafols Van Derdys, 211 DPR 34, 44 (2022). Dicha faena implica, además, observar como guía las sanciones impuestas a otros abogados por infracciones disciplinarias análogas. Íd. "Claro está, las circunstancias particulares de cada caso son determinantes". Íd.

Por ejemplo, en *In re* Castro Ward, *supra*, **suspendimos de forma permanente e indefinida a la abogada** mediante el procedimiento sumario previsto en la Sec. 9 de la Ley de 1909, *supra*, **luego de que ésta se declarara culpable**, en conexión con el ejercicio de la abogacía, **de dos (2) cargos menos graves** (intento de introducir contrabando en una cárcel federal) **tras alcanzar un preacuerdo con la Fiscalía** y ser sentenciada por el Tribunal Federal.

Por otro lado, en _In re_ Falcón López, 189 DPR 689 (2013), este Tribunal **suspendió indefinidamente a la abogada después de que se declarara culpable de cinco (5) delitos menos graves** (consistentes en no conservar constancias suficientes para determinar su responsabilidad contributiva) tras alcanzar un preacuerdo y ser sentenciada por el foro primario, el cual le impuso una multa y una pena especial de $100 por cada cargo. A raíz de estos hechos, y tras la designación de una Comisionada Especial, concluimos que la abogada había actuado en contravención de la Sec. 9 de la Ley de 1909, _supra_, así como del Canon 38, _supra_.

En otro caso, _In re_ Vázquez Torres II, _supra_, este Tribunal mediante una Opinión emitida en reconsideración, suspendió a la abogada por un término de seis (6) meses debido a hechos ocurridos con anterioridad a su admisión al ejercicio de la profesión. Específicamente, tras alcanzar un acuerdo con la Fiscalía, la abogada se declaró culpable de perjurio ante el Tribunal Federal y fue sentenciada a cumplir un (1) año de probatoria. Como circunstancias atenuantes, este Foro consideró el tiempo transcurrido entre la conducta imputada y la eventual aceptación de culpabilidad, el hecho de que la abogada completó verazmente la solicitud de admisión al ejercicio de la abogacía y que ejerció por más de dos (2) años sin señalamientos previos.[24]

---

[24] Véase, además, _In re_ Vázquez Torres I, 182 DPR 431 (2011). Allí, al suspender inicialmente a la abogada de forma indefinida, lo hicimos a la luz de la Sec. 9 de la Ley de 11 de marzo de 1909 (Ley de 1909), 4 LPRA sec. 735.

En *In re* Vega Morales, 167 DPR 331 (2006), la abogada fue declarada culpable por el tribunal de primera instancia de un **delito menos grave** (tentativa de apropiación ilegal agravada) por apropiarse de varias piezas de ropa interior de una tienda, por lo cual se dictó sentencia y se le impuso una multa de $200. A raíz de estos hechos, el Procurador General presentó una querella contra la abogada al amparo de la Sec. 9 de la Ley de 1909, *supra*, y del Canon 38, *supra*, tras lo cual **este Tribunal decretó su suspensión indefinida del ejercicio de la profesión.**

Además, en *In re* De la Texera Barnes, *supra*, suspendimos a dos abogados por el término de un (1) mes como consecuencia de un incidente por el cual fueron hallados culpables del delito menos grave de alteración a la paz y cada uno fue sentenciado al pago de una multa de $100. En este caso, este Tribunal dispuso del asunto al amparo del Canon 38, *supra*, ya que el incidente no ocurrió en el ejercicio de la profesión legal, por lo que no procedía la suspensión de los abogados conforme a la Sec. 9 de la Ley de 1909, *supra*.

Asimismo, en *In re* Deynes Soto, 164 DPR 327 (2005), el abogado alcanzó un acuerdo con el Ministerio Público y se declaró culpable de varios delitos contra fondos públicos cometidos mientras ejercía como senador. Por estos cargos se le impuso una pena de cuatro (4) años, con el beneficio de sentencia suspendida, además de una pena de restitución de $48,000. Tras evaluar el informe del Comisionado Especial designado, este Tribunal ordenó su suspensión del ejercicio

de la abogacía por un término de seis (6) meses, al amparo del Canon 38, *supra*.

Por último, repasemos lo ocurrido en *In re* Peña Peña, *supra*. En ese caso, el abogado fue acusado del delito de apropiación ilegal grave por hechos ocurridos mientras se desempeñaba como senador. Posteriormente, alcanzó un acuerdo con el Departamento de Justicia de Puerto Rico mediante el cual la Fiscalía reclasificó los delitos imputados al **delito menos grave** de omisión en el cumplimiento del deber. En consecuencia, el abogado se declaró culpable y el foro primario dictó sentencia, imponiéndole una multa de $100. Dado que el senador era abogado, el Procurador General presentó un informe ante este Foro para que tomáramos conocimiento de los referidos sucesos. En cumplimiento de nuestras órdenes, se presentó una querella al amparo del Canon 38, *supra*, y de la Sec. 9 de la Ley de 1909, *supra*. Luego de concluir que la Sec. 9 de la Ley de 1909 no aplicaba (principalmente porque **no se trataba de un delito grave, no ocurrió en conexión con el ejercicio de la abogacía ni tampoco podía determinarse que** la omisión en el cumplimiento del deber **constituía un delito menos grave que implicara depravación moral), atendimos el asunto exclusivamente bajo el Canon 38**, *supra*. Al disponer del caso, **decretamos la suspensión indefinida del abogado por entender que su conducta mancilló la toga y deshonró el buen nombre de la profesión legal.**

Como vemos, existe una gama de casos que presentan algunos hechos similares al que nos ocupa, en los cuales se han

impuesto sanciones de diversa duración. Esta particularidad, en unión a otros elementos que discutiremos, resulta relevante en nuestra evaluación de la sanción a imponer en esta ocasión.

En ese contexto, consideramos la trayectoria profesional de la licenciada Vázquez Garced como servidora pública en Puerto Rico a lo largo de casi 39 años en puestos como abogada en el Departamento de la Vivienda (1987-1988), fiscal (1989-2010), Procuradora de las Mujeres (2011-2016), Secretaria del Departamento de Justicia (2017-2019) y, finalmente, como gobernadora de Puerto Rico (agosto 2019-enero 2021). También tomamos en consideración el hecho de que nunca ha sido disciplinada por este Foro, sus actuaciones constituyen su primera falta y se trata de un hecho aislado no relacionado a la práctica de la profesión legal. Igualmente, aceptó su culpa al declararse culpable de sus actos,[25] y recibió un perdón presidencial total e incondicional. Por otro lado, **no podemos ignorar el hecho de que, dado a su amplia experiencia como abogada, fiscal, Secretaria de Justicia y funcionaria pública, la licenciada Vázquez Garced debía tener plena conciencia[26] de las consecuencias de sus actos al haber cometido un delito como**

---

[25] Aunque es de notar que, **al día de hoy, no hemos podido detectar ni una pizca de arrepentimiento de parte de la licenciada Vázquez Garced por los hechos admitidos**, circunstancia que este Tribunal no puede ni debe pasar por alto al aquilatar su proceder.

[26] Según definido por el Diccionario de la Real Academia Española, **"conciencia"** es el "conocimiento del bien y del mal que permite a la persona enjuiciar moralmente la realidad y los actos, especialmente los propios." (Subrayado suplido). Real Academia Española, *Diccionario de la lengua española*, 23.ª ed., Barcelona, Ed. Espasa Libros, 2014, pág. 594.

**el aquí envuelto (cuya comisión admitió), en violación a la ley. Aún más, al momento de los hechos en cuestión, la licenciada Vázquez Garced ostentaba el máximo cargo en el Gobierno de Puerto Rico al desempeñarse como gobernadora. Como mencionamos anteriormente, su conducta menoscabó gravemente la confianza de la ciudadanía en los procesos electorales atentando contra la integridad misma del sistema electoral, mancillando igualmente la toga y deshonrando el buen nombre de la profesión legal.**

Así, en virtud de nuestra facultad plenaria para disciplinar a un abogado cuando su conducta resulte contraria a los postulados éticos que rigen la profesión legal, independientemente del cargo que ocupe, <u>suspendemos a la licenciada Vázquez Garced del ejercicio de la abogacía y la notaría de forma inmediata e indefinida</u>. **Según ella misma admitió, la licenciada Vázquez Garced violó la ley a sabiendas y con intención de ello y, como dice el dicho en inglés, "only has herself to blame".**[27]

**IV**

Por los fundamentos antes expuestos, se suspende inmediata e indefinidamente a la licenciada Vázquez Garced del ejercicio de la abogacía y la notaría.

En consecuencia, se ordena al Alguacil de este Tribunal incautar la obra notarial que se encuentra bajo la custodia

---

[27] Es harto conocido que la frase "only has herself to blame" (en español vendría siendo "se lo buscó") significa que esa persona es la única causante de su propia situación desgraciada, problema o infortunio, sin culpa de más nadie. Se emplea para enfatizar responsabilidad personal por sus acciones y por las consecuencias.

de la señora Vázquez Garced al igual que su sello notarial para entregarlos al Director de la Oficina de Inspección de Notarías para el correspondiente examen e Informe.

Asimismo, la señora Vázquez Garced deberá notificar inmediatamente a todos sus clientes sobre su inhabilidad para continuar representándoles. Además, deberá devolver a sus clientes los expedientes de los casos pendientes, así como los honorarios recibidos por trabajos no realizados. De igual manera, deberá informar inmediatamente de su suspensión a cualquier foro judicial y administrativo en los que tenga algún asunto pendiente y acreditar a este Tribunal el cumplimiento con lo anterior, dentro del término de treinta (30) días, contado a partir de la notificación de esta Opinión y su correspondiente Sentencia. No hacerlo pudiera conllevar que no se le reinstale a la práctica de la profesión legal, de así solicitarlo en el futuro.

Por otro lado, en virtud de la suspensión de la práctica de la notaría, la fianza que garantiza las funciones notariales de la señora Vázquez Garced queda automáticamente cancelada.[28] Esta fianza se considerará buena y válida por tres (3) años después de su terminación, en cuanto a los actos realizados durante el periodo en que ésta estuvo vigente.

Se dictará Sentencia en conformidad.

ROBERTO FELIBERTI CINTRÓN<br>
Juez Asociado

---

[28] La vigencia de la fianza prestada es desde el 22 de febrero de 2026 al 22 de febrero de 2027.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*:

Wanda Vázquez Garced              TS-8709          Conducta
                                                   Profesional

SENTENCIA

En San Juan, Puerto Rico a 16 de marzo de 2026.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, se suspende de forma inmediata e indefinida a la Lcda. Wanda Vázquez Garced del ejercicio de la abogacía y la notaría.

En consecuencia, se ordena al Alguacil de este Tribunal a incautar la obra notarial que se encuentra bajo la custodia de la señora Vázquez Garced al igual que su sello notarial para entregarlos al Director de la Oficina de Inspección de Notarías para el correspondiente examen e Informe.

Asimismo, la señora Vázquez Garced deberá notificar inmediatamente a todos sus clientes sobre su inhabilidad para continuar representándoles. Además, deberá devolver a sus clientes los expedientes de los casos pendientes, así como los honorarios recibidos por trabajos no realizados. De igual manera, deberá informar inmediatamente de su suspensión a cualquier foro judicial y administrativo en los que tenga algún asunto pendiente y acreditar a este Tribunal el cumplimiento con lo anterior, dentro del término de treinta (30) días, contado a partir de la notificación de la Opinión y Sentencia.

No hacerlo pudiera conllevar que no se le reinstale a la práctica de la profesión legal, de así solicitarlo en el futuro.

Por otro lado, en virtud de la suspensión de la práctica de la notaría, la fianza que garantiza las funciones notariales de la señora Vázquez Garced queda automáticamente cancelada. Esta fianza se considerará buena y válida por tres (3) años después de su terminación, en cuanto a los actos realizados durante el periodo en que ésta estuvo vigente.

Notifíquese.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Kolthoff Caraballo emitió una Opinión de Conformidad a la cual se unió la Jueza Asociada señora Pabón Charneco. El Juez Asociado señor Colón Pérez emitió una Opinión de Conformidad.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Wanda Vázquez Garced          TS-8,709

Opinión de Conformidad emitida por el Juez Asociado señor Kolthoff Caraballo a la que se une la Jueza Asociada señora Pabón Charneco

En San Juan, Puerto Rico, a 16 de marzo de 2026.

> "*No hay profesión en la que el carácter moral se fije tan pronto como en el derecho; no hay ninguna en la que esté sujeto a un escrutinio más severo por parte del público... Desde el comienzo mismo de la carrera de un abogado,* **que cultive, por encima de todas las cosas, la verdad, la sencillez y la franqueza;** *son las virtudes cardinales de un abogado.*" G. Sharswood, Ética profesional 168, 169 (1844)(Énfasis suplido).

## I

Como lo demuestra nuestra jurisprudencia, por décadas hemos sancionado sin más a abogados que han hecho admisión de hechos que hemos determinado como violatorios de la conducta que exige la prestigiosa profesión legal. En este caso la única diferencia con relación a este punto es que la abogada que hizo la

admisión recibió, no un perdón o clemencia ejecutiva a nivel local (pues eso ya ha ocurrido antes), sino un perdón presidencial absoluto.

Sin embargo, y como bien se explica en la Opinión del Tribunal, el efecto de tal perdón presidencial absoluto es que libra a la abogada de las consecuencias de sus actuaciones criminales en la jurisdicción federal, pero no del **poder inherente** de este Tribunal para evaluar y sancionar tales actuaciones. O sea, la realidad es que un perdón ejecutivo o presidencial, aunque sea el más profundo y "sincero" de los perdones, no borra la realidad o el hecho histórico de que, como magistralmente plantea la Opinión del Tribunal, la abogada fue convicta mediante su propia admisión libre e inteligente, y de que, en ese contexto, este Tribunal tiene la obligación de evaluar tal convicción por admisión.

Aunque en nuestra forma democrática de gobierno es harto conocido que las clemencias ejecutivas responden a vestigios monárquicos que tal vez deberían desaparecer, no nos corresponde a nosotros como poder constitucional evaluar la sabiduría de tal mecanismo, y mucho menos la corrección de su uso en determinado caso. De hecho, en muchas ocasiones tal vez lo que inquieta no es el perdón concedido, sino las razones o motivaciones por el cual se otorga. Pero el punto es que lo ocurrido en este caso es que el perdón presidencial absoluto concedido a la abogada dejó al tribunal federal sin jurisdicción, **pero no a nosotros.**

**II**

### El asunto del perdón presidencial otorgado

Con relación a este tema, el asunto está más que aclarado por nuestra jurisprudencia. Y es que, en *In re Silva Iglecia*, 162 DPR 105, 122 (2004), al final de la Opinión este Tribunal hizo la siguiente advertencia:

> *"Desde hoy le hacemos claro a la clase togada que el ejercicio de nuestra jurisdicción disciplinaria rebasa y es irrespectivo del indulto o perdón del Poder Ejecutivo a un abogado convicto de un delito. Basta con que la conducta del abogado en su condición de juez, legislador o en cualquier otra actividad, irrespectivo del delito que resulte convicto, sea incompatible con los cánones del Código de Ética Profesional que rigen la conducta de los miembros de la clase togada, para que este Tribunal ejerza su jurisdicción disciplinaria".*

Es claro entonces que un indulto no borra la conducta ética reprochable y que la jurisdicción disciplinaria del Tribunal es independiente.

**III**

### La Ley de 11 de marzo de 1909

Por otro lado, como sabemos, la Sección 9 de la Ley de 11 de marzo de 1909[1], se refiere expresamente a situaciones en las que un togado ha sido convicto de delito. El texto de la ley señala lo siguiente:

> *"El abogado que fuere culpable de engaño, conducta inmoral (malpractice), delito grave (felony) o delito menos grave (misdemeanor), en conexión con el ejercicio de su profesión o que fuere culpable de cualquier delito que implicare depravación moral, podrá ser suspendido o destituido de su profesión por el Tribunal Supremo de Puerto Rico.*

---

[1] 4 LPRA sec. 735.

*La persona que siendo abogado fuere convicta de un delito grave cometido en conexión con la práctica de su profesión o que implique depravación moral, cesará convicta que fuere, de ser abogado o de ser competente para la práctica de su profesión."*

Aunque este es el texto pertinente de esta antigua ley, en el pasado hemos establecido claramente que este estatuto más bien establece un mecanismo sumario en las circunstancias descritas en la referida sección. *In re Peluzzo Perotín*, *Supra*, 328-329. Esto es, si existe una convicción que cumple con los requisitos de ese estatuto, la suspensión es sumaria sin tener que dar oportunidad al togado de que se exprese o se defienda.

Así, la realidad de que nuestro poder inherente prevalece sobre las disposiciones de la Sección 9 de la Ley de 1909, explica porqué en algunos casos en los que un togado ha resultado convicto este Tribunal ha actuado fundamentando su determinación en esa Ley, mientras que en otros casos bajo esa misma circunstancia ha ejercido su facultad inherente, cuando el estatuto no resulta estrictamente aplicable. De todos modos, en ambos escenarios, la fuente última de autoridad disciplinaria es la función constitucional del Tribunal Supremo como regulador del ejercicio de la profesión legal.

En conclusión, en cuanto a la naturaleza y las clasificaciones de los delitos que establece la Sec. 9 de la Ley de 11 de marzo de 1909 como aparente requisito para activar nuestro poder disciplinario, es claro que si bien tales

clasificaciones pueden ser un factor pertinente, no pueden operar como una camisa de fuerza a nuestro poder disciplinario, que termine exonerando conductas que podrían ser sancionables por ser lesivas al prestigio de la profesión legal. De otra manera, la Asamblea Legislativa terminaría otorgando *de facto* exoneraciones deontológicas a actuaciones que no tienen el poder de sancionar éticamente.

## IV

### La "depravación moral" de la Sección 9 de la Ley de 1909

Aun así, el texto de la citada Sec. 9 de la Ley de 1909 que en última instancia podría ser pertinente a los hechos de este caso en particular es la expresión que señala que "*[e]l abogado… que fuere culpable de cualquier delito que implicare depravación moral, podrá ser suspendido o destituido de su profesión por el Tribunal Supremo de Puerto Rico*". De manera que, conforme a este texto, parecería que en este caso tendríamos que evaluar si el delito por el cual la licenciada Vázquez Garced hizo alegación de culpabilidad implica "depravación moral".

Sin embargo, en primer lugar y como ya antes señalé, es claro que la Sec. 9 de la Ley de 11 de marzo de 1909, aplicaría, en todo caso, solo ante la intención de suspender a la togada de manera sumaria, sin que tuviera la oportunidad de ser oída, lo que no ha ocurrido en este caso. Pero, además, y con relación a si el delito tendría que ser uno que penalmente implique depravación moral, ya hemos resuelto que la "depravación moral" a la que alude esta Sección 9 de la Ley

de 11 de marzo de 1909, más bien "*consiste en hacer algo contrario a la justicia, la honradez, los buenos principios o la moral. En general[,] la consideramos como un estado o condición del individuo, compuesto por una deficiencia inherente de su sentido de la moral y la rectitud…*". *In re Calderón Nieves*, 157 D.P.R. 299, 303 (2002). En otras palabras, "depravación moral" en este contexto no es un concepto técnico limitado por las clasificaciones del derecho penal. Por el contrario, "*la depravación moral supone [simplemente] que se haya actuado contrario a la ética, la honradez, los más altos principios o la justicia.*" *In re Peluzzo Perotín*, *supra*, 329.

V

### *El caso de In re Peña Peña*

En *In re Peña Peña*, 153 D.P.R. 642 (2001), ocurrió una situación muy parecida al caso que nos ocupa. El licenciado Joaquín Peña Peña, mientras se desempeñaba como senador, fue acusado de apropiación ilegal en su modalidad grave, por haber incurrido en la llamada práctica de "empleados fantasmas". Aunque fue acusado inicialmente por apropiación ilegal agravada, finalmente se declaró culpable por el delito menos grave de omisión en el cumplimiento del deber, por lo cual solo pagó una multa de $100.

Sin embargo, culminado el proceso penal el Procurador General presentó una querella ante este Foro en contra del licenciado Peña Peña, para la cual ordenamos la celebración de una vista evidenciaria ante un Comisionado Especial.

Finalmente, tras un proceso evidenciario extenso, este Tribunal concluyó que la conducta probada —relacionada con el esquema de "empleados fantasmas" y el uso indebido de fondos públicos— revelaba deshonestidad e indignidad incompatibles con la profesión. Así, y en el ejercicio de nuestro poder inherente, suspendimos indefinidamente al licenciado Peña Peña del ejercicio de la abogacía y la notaría.

Ahora bien, en ese caso reconocimos que el tipo de delito por el cual el abogado había hecho alegación de culpabilidad no activaba la suspensión automática de la Sección 9 de la Ley de 1909. No obstante, fundamentados en nuestro poder inherente para disciplinar al abogado, concluimos que su conducta demostraba deshonestidad e indignidad incompatible con la profesión. De hecho, en este caso, citando *Colegio de Abogados de P.R. v. Barney*, 109 D.P.R. 845, 848 (1980), expresamos que: "*[s]iendo inherente tal facultad, podemos ordenar la separación de un abogado por motivos distintos de aquellos que para el desaforo ha decretado por ley la Asamblea Legislativa. La causa no tiene que ser necesariamente de origen legislativo*".

Nótese que en *In re Peña Peña*, *supra*, el abogado hizo alegación en un preacuerdo por un delito menos grave, pero este Tribunal ordenó que en un proceso disciplinario se pasara la prueba por el delito original, apropiación ilegal agravada, y fue por esos hechos que lo suspendimos indefinidamente.

**VI**

*El concepto "prestigio de la profesión legal"*

El concepto "prestigio de la profesión legal" ocupa un lugar central en el Código de Ética Profesional de Puerto Rico de 1970.[2] Es posible definir el "prestigio de la profesión legal" como la estimación social, institucional y moral que merece el sistema de justicia y la clase togada, esta última, como cuerpo profesional que es funcionario de ese sistema de justicia. Tal estimación pende, entre otras cosas, de la honradez, la dignidad, la integridad y la conducta ejemplar de la clase togada, tanto en el ejercicio de la profesión como en su vida privada, y en su contribución efectiva a la confianza pública en la justicia.

De hecho, el Preámbulo del Código de Ética de 1970 refuerza esta concepción desde una perspectiva institucional al iniciar señalando que "*[e]n Puerto Rico, donde el sistema democrático es fundamental para la vida de la comunidad y donde la fe en la justicia se considera factor determinante en la convivencia social, es de primordial importancia institucional mantener un orden jurídico íntegro y eficaz, que goce de la completa confianza y apoyo de la ciudadanía*".[3] Esta formulación revela que **el prestigio de la profesión legal es un presupuesto indispensable para la legitimidad del sistema**

---

[2] En vista del momento que alegadamente ocurrieron los hechos, corresponde juzgar las acciones de la licenciada Vázquez Garced de conformidad con los cánones de ética del Código de 1970, y no de las nuevas Reglas de Conducta Profesional.

[3] Preámbulo del Código de Ética, según aprobado mediante Resolución del Tribunal Supremo del 24 de diciembre de 1970.

**democrático y para el adecuado funcionamiento de la administración de la justicia**.

En el pasado hemos dicho que el "*abogado puertorriqueño…[es uno] esforzado en su quehacer y celoso guardador en todo momento de la dignidad y prestigio de nuestros tribunales que son una[,] e inseparables de la propia dignidad y prestigio de la profesión de abogado*". *In re Martínez, Jr.*, 108 D.P.R. 158, 163-64 (1978). *A contrario sensu*, toda conducta del abogado que menoscabe la confianza pública, aun cuando no constituya delito o infracción penal, atenta contra el prestigio de la profesión y justifica la intervención disciplinaria del Tribunal Supremo. El prestigio, así concebido, no es un atributo accesorio de la abogacía, sino uno de los pilares que sostienen su función social y constitucional.

## VII

Habiendo considerado lo relacionado con el perdón presidencial, la Sección 9 de la Ley de 1909, y la importancia del prestigio de la profesión legal, corresponde entonces, a la luz del Código de Ética Profesional, examinar los hechos del caso de autos.

En este caso nos encontramos con una abogada que hizo alegación de culpabilidad por haber aceptado voluntariamente una contribución electoral por parte de una persona o entidad

extranjera, un delito federal considerado menos grave. (52 U.S.C. § 30121(2)).[4]

Corresponde entonces evaluar qué sanción amerita éticamente el delito por el cual la licenciada Vázquez Garced hizo alegación. Como parte del análisis nos es necesario considerar no solo la seriedad del delito, sino el grado de introspección que ha mostrado la abogada durante y luego de su admisión de culpabilidad. Y es que, en este caso, no podemos pasar por alto lo que ha sido la actitud de la abogada ante los foros públicos. Después de todo, **cuando evaluamos las acciones y actitudes de un abogado en el contexto del perjuicio que su actuación le ha causado al prestigio de la clase togada, a lo que nos referimos llanamente es a la forma en que un ciudadano común y corriente evalúa las circunstancias, y lo que ha sido la mala actuación y la actitud de ese abogado o abogada ante esas circunstancias.** O sea, en este contexto, el perjuicio al prestigio de la abogacía se da en función del daño que sufre ese prestigio ante los ojos del pueblo que ve y juzga la mala actuación y las actitudes de un abogado o

---

[4] (a) Prohibition
It shall be unlawful for--
(1) a foreign national, directly or indirectly, to make--
(A) a contribution or donation of money or other thing of value, or to make an express or implied promise to make a contribution or donation, in connection with a Federal, State, or local election;
(B) a contribution or donation to a committee of a political party; or
(C) an expenditure, independent expenditure, or disbursement for an electioneering communication (within the meaning of section 30104(f)(3) of this title); or
(2) a person to solicit, accept, or receive a contribution or donation described in subparagraph (A) or (B) of paragraph (1) from a foreign national.

abogada; es ante el pueblo que nos ve que la clase togada gana o pierde prestigio.

Como sabemos, la licenciada Vázquez Garced hizo alegación de culpabilidad por un delito por el cual, aunque menos grave, **hubiera podido ser multada y condenada a un año de cárcel**.[5] En ese contexto me parece importante considerar lo siguiente. El 8 de julio de 2025, la Hon. Silvia Carreño Coll, juez del Tribunal de Distrito a cargo del caso en el que la licenciada Vázquez Garced hizo alegación de culpabilidad, emitió una Resolución que es pertinente considerar, y de la cual podemos tomar conocimiento judicial. Ante una solicitud para que se le excusara de asistir presencialmente a la vista en la que la abogada haría su admisión de culpabilidad, la juez emite esta Resolución denegándola. Sin embargo, lo que llama la atención de la Resolución es el claro tono de indignación y molestia con el que la Juez Carreño Coll escribe la resolución.

La honorable Silvia Carreño comienza la resolución citando lo dicho por la Juez Asociada del Tribunal Supremo de los Estados Unidos, Ketanji Brown Jackson en su opinión disidente en el caso de Trump v. United States, 603 U.S. 593, 688 (2024):

---

[5] 52 U.S.C. §30109(d)(1)(A)(ii)
    (d) Penalties; defenses; mitigation of offenses
    (1)(A) Any person who knowingly and willfully commits a violation of any provision of this Act which involves the making, receiving, or reporting of any contribution, donation, or expenditure--
        (i) …
        (ii) aggregating $2,000 or more (but less than $25,000) during a calendar year shall be fined under such title, or imprisoned for not more than 1 year, or both.

"*Cuando el Gobierno Federal considera que alguien ha infringido una ley penal y decide ejercer su discreción procesal para sancionar dicha infracción, convence al gran jurado de que existe causa probable para acusarle*". ("*When the Federal Government believes that someone has run afoul of a criminal statute and decides to exercise its prosecutorial discretion to pursue punishment for that violation, it persuades a grand jury that there is probable cause to indict.*")[6]

Acto seguido la honorable Carreño Coll señala:

"*Eso es precisamente lo que hizo el Gobierno al acusar a la Sra. Wanda Vázquez-Garced… en este caso. El expediente del caso refleja que, durante casi tres años (sin contar los años que las autoridades policiales dedicaron a investigar las acusaciones incluidas en la acusación), el Gobierno llevó adelante con celo su caso contra dichos acusados.*" ("*That is precisely what the Government did when it charged Mrs. Wanda Vázquez-Garced… in this case. The case docket reflects that, for almost three years (without counting the years spent by law enforcement officials investigating the allegations included in the Indictment), the Government zealously prosecuted its case against those Defendants.*")[7]

Y entonces añade la Juez Carreño:

"**Sin embargo, en un giro inesperado de los acontecimientos, los acusados anunciaron que llegaron a un acuerdo con el Gobierno.** *En virtud de dicho acuerdo informaron que la Fiscalía de los Estados Unidos para el Distrito de Puerto Rico ya no presentaría los cargos incluidos en la acusación original… En su lugar, el Gobierno presentaría una acusación penal por un solo cargo. … Ahora se les acusa de violar la Ley Federal de Campañas Electorales ("FECA"). **Sorprendentemente, la pena por violar la Sección 30121 de la FECA es un simple jalón de orejas en comparación con la condena que enfrentarían los acusados si fueran condenados por la conducta imputada en la acusación formal.** Pero, lamentablemente, la decisión del Gobierno de cambiar de estrategia a última hora se permite porque, en última instancia, el Gobierno decide cómo ejercerá su discreción procesal… Por lo*

---

[6] United States v. Vázquez-Garced, 3:22-cr-00342, Docket. 885, pág. 1.

[7] Íd.

*tanto, dado que el Tribunal no violará los principios de separación de poderes y mantiene el máximo respeto por la Constitución y el estado de derecho, no le queda otra opción que respetar la decisión del Gobierno."* (Énfasis suplido). *(In a turn of events, however, the Defendants announced that they reached an agreement with the Government. … [T]hey informed that the United States Attorney's Office for the District of Puerto Rico would no longer pursue the charges included in the Indictment… Instead, the Government would file one-count criminal informations. … They… now charged with violating the Federal Electoral Campaign Act ("FECA"). Strikingly, the penalty for violating Section 30121 of the FECA is a mere slap on the wrist when compared to the sentencing exposure the Defendants faced if convicted of the conduct charged in the Indictment. But alas, the Government's decision to shift gears at the eleventh hour is allowed because ultimately the Government decides how it will exercise its prosecutorial discretion. … So, because the Court will not violate separation of power principles and holds the utmost respect for the Constitution and the rule of law, it is left with no other option but to respect the Government's decision.)*[8]

Es evidente la molestia e indignación de la Juez Carreño Coll. Desde mi punto de vista, y en el contexto del daño producido al prestigio de la profesión en el proceso de este caso, las expresiones de la Juez reflejan la misma indignación y molestia que también se refleja de forma general en la opinión pública en Puerto Rico. Así, el tono y las palabras de la compañera Carreño Coll están más que justificadas si las enmarcamos en la notoria expresión del Juez Serrano Geyls en *Pueblo v. Luciano Arroyo*, 83 D.P.R. 573, 582 (1961), de que *"[l]os jueces no debemos, después de todo, ser tan inocentes como para creer declaraciones que nadie más creería"*. O sea,

---

[8] Id., págs. 2-3.

y parafraseando esa expresión: los jueces no debemos, después de todo, estar tan desconectados como para ignorar lo que todo el mundo percibe.

Nótese que los delitos originales por los cuales la licenciada Vázquez Garced fue acusada fueron el resultado de que un gran jurado federal escuchó una prueba y tomó esa determinación. Luego, después de anunciar e iniciar el descubrimiento de una inmensa cantidad de prueba, de una manera sorprendente (como bien lo caracteriza la Jueza Carreño Coll), la fiscalía accedió a retirar esos cargos y acusar por un delito menos grave. Ante todo esto, uno termina preguntándose qué fue lo que realmente pasó aquí, y si es cierto que lo que ocurrió a nivel federal como resultado del sorprendente indulto federal es correcto: "que aquí no pasó nada".

Y lo anterior es pertinente porque, como ya intimé, esta Curia está obligada a cuidar o proteger el prestigio de la profesión legal. Esto es, evaluar cómo ese prestigio se pudo haber afectado por las circunstancias de este caso en particular. Y en ese contexto, nuestra determinación como único y final foro juzgador de las acciones y actitudes de la licenciada Vázquez Garced ante estos hechos, podrían ciertamente rehabilitar la confianza de ese pueblo en nuestra clase togada, o perjudicarla aún más si el pueblo hubiera percibido que, como advirtió la honorable Silvia Carreño, lo que le hubiéramos dado a la abogada hubiera sido un mero "jalón de oreja".

Pero más aún. Con relación a la seriedad del delito, la honorable Silvia Carreño señala algo que también es pertinente considerar. Al emitir su denegatoria a que la licenciada Vázquez Garced compareciera virtualmente a hacer su admisión de culpabilidad, la juez Carreño señaló lo siguiente:

> *"Si bien los acusados están ahora acusados de un delito menor, este sigue siendo un delito que atenta contra la integridad de nuestro proceso electoral democrático. El delito imputado representa un atentado contra un principio fundamental de nuestra sociedad democrática: elecciones libres y justas. Por consiguiente, el Tribunal no ejercerá su discreción para permitir que las audiencias de lectura de cargos y declaración de culpabilidad se celebren por videoconferencia."* (*"While the Defendants are now charged with a misdemeanor offense, it is still an offense that lacerates the integrity of our democratic electoral process. The offense charged represents an attack on a fundamental principle of our democratic society: free and fair elections. Accordingly, the Court will not exercise its discretion to allow the arraignment and plea hearings to be held by video-teleconference."*)

Ciertamente la Juez Carreño tiene toda la razón. Aunque un delito menos grave, esto no se trata de un delito menos grave cualquiera. Por eso la jueza le pudo haber impuesto a la licenciada Vázquez Garced (como, de hecho, fue la recomendación de los fiscales del caso) hasta un año de cárcel. Sobre todo, **por la poca introspección y falta de sabiduría y humildad que mostró la licenciada Vázquez Garced en sus expresiones inmediatamente después de hacer su alegación de culpabilidad,** y que todos los medios de comunicación pública nos permitieron ver.

## VIII

Al evaluar cuál debería ser la sanción impuesta en circunstancias como estas, es menester considerar también el hecho particular de que la licenciada Vázquez Garced no solo fue fiscal y Secretaria de Justicia, sino que **fungía como gobernadora al momento en que cometió los hechos delictivos**. En ese contexto el caso guarda alguna similitud con lo ocurrido en el caso del expresidente William (Bill) Clinton, al cual el Tribunal Supremo de Arkansas lo suspendió de la práctica de la profesión por un término de 5 años, y lo hizo pagar una multa de $25,000.

En síntesis, lo ocurrido en ese proceso disciplinario fue lo siguiente. Debido al caso de *Clinton v. Jones*, 520 U.S. 681 (1997), el entonces presidente William J. Clinton se vio obligado a sentarse a declarar bajo juramento en una deposición en la cual emitió declaraciones "*falsas, engañosas y evasivas diseñadas para obstruir el proceso judicial... [sobre] si él y la Sra. [Mónica] Lewinsky habían estado alguna vez solos y si él había tenido relaciones sexuales con la Sra. Lewinsky*".[9] Dichas expresiones constituyeron la base fáctica para evaluar su conducta a la luz de los deberes éticos aplicables a los abogados. Sin embargo, surge de la Resolución y Orden, en primer lugar, que la suspensión por cinco años y la multa por $25,000 impuesta por el Tribunal Supremo de Arkansas no se fundamentó en la conducta sexual subyacente,

---

[9] Neal v. Clinton, No. CIV 2000-5677, 2001 WL 34355768, (Ark. Cir. Ct. 19 de enero de 2001).

sino en la conducta deshonesta del presidente Clinton al rendir testimonio falso bajo juramento en un procedimiento judicial.

Pero, en segundo lugar y como punto pertinente al caso de la licenciada Vázquez Garced, aunque el cargo presidencial no operó como un factor jurídico autónomo para imponer la sanción al presidente Clinton como abogado, sí confirió a la conducta un peso contextual e institucional ineludible. Y es que, en el proceso disciplinario, el Tribunal Supremo de Arkansas llamó la atención al hecho de que "*[l]as acciones del Sr. Clinton, objeto de esta Resolución y Orden, lo han sometido a numerosas críticas públicas… [establece] un mal ejemplo para otros litigantes, y este efecto perjudicial se vio magnificado por el hecho de que, en el momento de su testimonio, el Sr. Clinton se desempeñaba como Presidente de los Estados Unidos.*"[10]

De manera que, el hecho de que el testimonio falso fuera emitido por un abogado que, simultáneamente, encarnaba la más alta autoridad del poder ejecutivo federal, amplificó el impacto institucional de la falta, al incidir directamente sobre la confianza pública en la integridad del sistema judicial y en la profesión legal. Asimismo, la notoriedad del cargo hizo imposible caracterizar la conducta como un asunto estrictamente privado o separado de repercusiones públicas. En ese sentido, la visibilidad del presidente-abogado y su

---

[10] Id. (Énfasis suplido).

función simbólica dentro del orden constitucional intensificaron el daño a la fe pública, aun cuando ese elemento no fuera invocado expresamente como fundamento independiente de la sanción disciplinaria.

Lo mismo ocurre con la licenciada Vázquez Garced. **El hecho de que cometiera los hechos cuando fungía incidentalmente como gobernadora, aunque no relacionado con la práctica del derecho, producen en la esfera pública una repercusión que no ocurre con otros abogados en las mismas circunstancias.** Por eso se dice que el presidente de los Estados Unidos, el vicepresidente de los Estados Unidos, así como los gobernadores y otros miembros del gabinete o subgabinete de un gobernador, son abogados públicos con una responsabilidad pública especial.[11] Así, por ejemplo, en *Maryland State Bar Association v. Agnew*,[12] el máximo foro de Maryland resolvió que la deshonestidad deliberada de un abogado cometida mientras ocupaba cargos públicos de la más alta jerarquía, constituye una violación ética particularmente grave, pues traiciona la confianza pública y erosiona la integridad del sistema democrático, lo que justifica la imposición de la sanción disciplinaria máxima.

---

[11] Robert F. Blomquist, Ten Vital Virtues for American Public Lawyers, 39 Ind. L. Rev. 493, 501 (2006).

[12] Maryland State Bar Ass'n v. Agnew, 271 Md. 543, 318 A.2d 811, 819-820 (1974).

## IX

Por todo lo anterior, no puedo sino coincidir plenamente con la sanción impuesta a la abogada en este caso. Ante la admisión de culpabilidad de la Lcda. Wanda Vázquez Garced por hechos cometidos cuando fungía incidentalmente como gobernadora de todos los puertorriqueños, unido a su total falta de introspección de lo que la llevó a la circunstancia en que se encuentra, estoy conforme con su suspensión inmediata e indefinida de la práctica de la profesión legal.

Erick V. Kolthoff Caraballo
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*:

Wanda Vázquez Garced                TS-8,709

Opinión de Conformidad emitida por el Juez Asociado señor COLÓN PÉREZ.

En San Juan, Puerto Rico, a 16 de marzo de 2026.

> *Más allá de lo que aquí se diga, saber que con tus actuaciones le fallaste al Pueblo de Puerto Rico es, - - por sí sólo - -, una cadena perpetua. Quien incurra en dicha conducta, de esa sanción no se escapa jamás.*

El 28 de enero de 2026, la Secretaría del Tribunal Federal de Distrito para el Distrito de Puerto Rico nos remitió una *Orden* mediante la cual la Hon. Silvia Carreño Coll (en adelante, "Jueza Carreño Coll"), el pasado 27 de enero de 2026, desestimó la causa criminal que se llevaba en contra de la Sra. Wanda Vázquez Garced (en adelante, "señora Vázquez Garced"), en vista de que esta última recibió

y aceptó un indulto concedido por el Presidente de los Estados Unidos, Donald J. Trump.

El referido perdón presidencial a la señora Vázquez Garced de ninguna manera varía los cargos criminales originalmente imputados en su contra,[1] -- a saber, (1) conspiración, bajo la 18 U.S.C. sec. 371; (2) sobornos con programas federales, según las 18 U.S.C. secs. 666(a)(1)(B) y 2; y (3) fraude, conforme a las 18 U.S.C. secs. 1343, 1346 y 2 --, ni su eventual alegación preacordada de culpabilidad por el delito de aceptar contribuciones políticas de un ciudadano extranjero, tipificado en la 52 U.S.C. sec. 30121.[2]

---

[1] La Constitución federal confiere al Presidente la autoridad para conceder indultos y clemencias por ofensas cometidas contra los Estados Unidos. Art. II, Sec. 2, Cl. 1, Const. EE. UU., LPRA, Tomo 1. **No obstante, un perdón presidencial no tiene el alcance de eximir de responsabilidad penal frente a los estados, como tampoco impide procedimientos civiles o ético-disciplinarios.** *Ex parte Grossman*, 267 U.S. 87, 111-113 (1925); *Grossgold v. Supreme Court of Illinois*, 557 F.2d 122, 125-126 (7mo Cir. 1977); *In re Abrams*, 689 A.2d 6, 7 (D.C. 1997).

[2] Al examinar el desenlace de la causa criminal en contra de la señora Vázquez Garced, resulta imprescindible considerar las siguientes expresiones de la Jueza Carreño Coll en una *Orden* del 8 de julio de 2025, mediante la cual denegó que las vistas de lectura de acusación y declaración de culpabilidad se celebrasen mediante videoconferencia:

> El expediente refleja que, durante casi tres años (sin contar los años que las autoridades dedicaron a investigar las alegaciones de la acusación), el Gobierno llevó celosamente su caso contra los acusados. […] Sin embargo, en un giro inesperado, los acusados anunciaron que llegaron a un acuerdo con el Gobierno. En virtud de éste, informaron que la Fiscalía de los Estados Unidos para el Distrito de Puerto Rico ya no presentaría los cargos incluidos en la acusación original. […] En su lugar, el Gobierno presentaría una acusación por un sólo cargo [bajo la Ley Federal de Campañas Electorales ("FECA")]. […] Sorprendentemente, la pena por violar la Sección 30131 de la FECA es un simple palmetazo en la mano en comparación con la condena que enfrentarían los acusados si fueran sentenciados por la conducta imputada en la acusación formal. Pero, lamentablemente, la decisión del Gobierno de cambiar de estrategia a última hora se permite, porque, en última instancia, el Gobierno decide cómo ejercerá su discreción para acusar. (The case docket reflects that, for almost three years (without counting the years spent by law enforcement officials investigating the allegations included in the Indictment), the Government zealously prosecuted its case against those Defendants. […] In a turn of events,

Tal conducta, -- entiéndase, la que sustentó los mencionados cargos en contra de esta última --, analizada desde una perspectiva estrictamente deontológica, evidencia una trasgresión fundamental a los postulados éticos que rigen la profesión legal.[3] **Ello, pues aceptar capital extranjero para financiar una campaña política en la contienda más trascendental de nuestro País tiñe la pureza del proceso eleccionario con las tinieblas de la corrupción, y, a todas luces, constituye un acto de depravación moral.**[4]

---

however, the Defendants announced that they reached an agreement with the Government. Pursuant to that agreement […], they informed that the United States Attorney's Office for the District of Puerto Rico would no longer pursue the charges included in the Indictment. Instead, the Government would file one-count criminal informations. […] Strikingly, the penalty for violating Section 30121 of the FECA is a mere slap on the wrist when compared to the sentencing exposure the Defendants faced if convicted of the conduct charged in the Indictment. But alas, the Government's decision to shift gears at the eleventh hour is allowed because ultimately the Government decides how it will exercise its prosecutorial discretion.) (Traducción nuestra y citas omitidas). *Order*, págs. 1-3, *United States v. Vázquez-Garced*, núm. 22-cr-00342 (D.P.R. 2026), entrada núm. 885.

[3] Por entenderlo acertado y pertinente, nos hacemos eco del siguiente pronunciamiento del más alto foro de Nueva York, en voz de su entonces Juez Presidente, Benjamin N. Cardoso, -- quien luego se convertiría en Juez Asociado del Tribunal Supremo de Estados Unidos --, al exponer el alcance de un indulto presidencial en un proceso disciplinario contra un abogado que enfrentaba cargos federales por conspiración:

Se requiere prueba convincente de inocencia para que un indulto tenga el efecto de reestablecer el privilegio de pertenecer a la profesión legal. **Incluso, la inocencia de un crimen será insuficiente si se ha fallado con la obligación de seguir los estándares de moralidad y honor.** Un indulto no hace más que dar paso a ese análisis, el cual sería improcedente de otro modo. (There must be convincing proof of innocence before pardon will restore to the fellowship of the bar. Even innocence of crime will not suffice if there has been a failure to live up to the standards of morality and honor. Pardon does no more than open the door to an inquiry that would otherwise be barred.) (Traducción nuestra y énfasis suplido). *In re Kaufmann*, 245 N.Y. 423, 430-31(1927).

[4] Sobre el particular, la Jueza Carreño Coll señaló que, "[s]i bien contra los acusados ahora pesa un delito menos grave, éste sigue siendo una ofensa que atenta contra la integridad de nuestro proceso electoral democrático. **El delito imputado representa un atentado contra un principio fundamental de nuestra sociedad democrática: elecciones libres y justas**".

Como es sabido, y cónsono con lo expuesto por el tratadista Sigfrido Steidel Figueroa en su obra *Ética para juristas: Ética del abogado y responsabilidad disciplinaria,* al hablarse de la conducta de los abogados y las abogadas, "el concepto depravación moral no adolece de imprecisión. **Se ha expresado que esta consiste 'en hacer algo contrario a la justicia, la honradez, los buenos principios o la moral'"**. S. Steidel Figueroa, *Ética para juristas: Ética del abogado y responsabilidad disciplinaria*, San Juan, Ed. Situm, 2016, págs. 430-431. Véase, además, *Morales Merced v. Tribunal Superior*, 93 DPR 423 (1966) e *In re Guardiola Ramírez*, 169 DPR 414 (2006) (citando con aprobación de *In re García Quintero*, 138 DPR 669 (1995)). De este modo, perpetrar el patrón de conspiración y fraude aquí envuelto, es, sin lugar a duda, incurrir en depravación moral.

**Habiéndose establecido, pues, que la señora Vázquez Garced incurrió en dicha conducta, su permanencia en el ejercicio de la profesión legal resulta insostenible. La depravación moral representa una negación frontal de los valores de honestidad, integridad y respeto por el ordenamiento jurídico que constituyen el fundamento mismo de la abogacía. Quien incurre en este tipo de conducta demuestra una incapacidad esencial para cumplir con los deberes éticos**

---

("While the Defendants are now charged with a misdemeanor offense, it is still an offense that lacerates the integrity of our democratic electoral process. The offense charged represents an attack on a fundamental principle of our democratic society: free and fair elections."). (Traducción nuestra y énfasis suplido). *Order*, *supra*, pág. 3.

**inherentes a la profesión legal y pierde, por sus propios actos, el privilegio de ejercerla.**

Tales actuaciones constituyen, a su vez, una violación grave y múltiple de los Cánones de Ética Profesional, 4 LPRA Ap. IX; particularmente, de aquellos que exigen decoro, rectitud y conducta ejemplar, tanto en la práctica del derecho como en el desempeño de funciones públicas. Véase, a modo de ejemplo, Cánones 35 y 38 de los de Ética Profesional, *supra*.

En el caso de una funcionaria que ostentó el cargo de Gobernadora del Estado Libre Asociado de Puerto Rico, y habiendo sido antes Secretaria de Justicia y Fiscal, el estándar ético exigible es aún más alto, pues sus actuaciones tienen un impacto directo en la confianza ciudadana en el Estado de Derecho. **El uso indebido del poder y la conducta deshonrosa desde una posición de autoridad representan una afrenta directa a la dignidad de la profesión legal y al sistema de justicia en su conjunto.**

**Ante ese cuadro fáctico probado, la única sanción compatible con los fines del régimen disciplinario vigente radica en el desaforo inmediato e indefinido de la señora Vázquez Garced del ejercicio de la abogacía en nuestro País.** Así lo habíamos hecho en el pasado con abogados y abogadas que habían incurrido en conducta similar.[5]

---

[5] Según Steidel Figueroa, basta con analizar la jurisprudencia de este Tribunal para percatarse que, en el pasado, ya hemos sentenciado que

> denotan depravación moral los delitos de no rendir planillas sobre ingresos; soborno; oferta de soborno; conspiración para defraudar al Gobierno de los Estados Unidos, interferencia con el comercio mediante extorsión y fraude contra el Gobierno de Puerto Rico; conspiración para lavar

Cualquier sanción menor o, peor aún, el no sancionar el proceder de esta última trivializaría la gravedad de la conducta exhibida por la señora Vázquez Garced y enviaría un mensaje de tolerancia frente a la corrupción ética dentro de la profesión legal puertorriqueña.

**Hoy, el Tribunal Supremo de Puerto Rico, como custodio de la pureza y honorabilidad de la abogacía, responde sabiamente a su deber ineludible de excluir del foro legal a quien, mediante conducta depravada, demostró no ser merecedora de la confianza pública ni del privilegio de ejercer el derecho en Puerto Rico. Por ello, estamos conforme con el curso de acción seguido por mis compañeros y compañeras de estrado.**

Ángel Colón Pérez
Juez Asociado

---

dinero; sodomía y violación; "aprovechamiento de funcionario público de cargos y servicios públicos", posesión y traspaso de documentos falsificados, falsificación de sellos, apropiación ilegal de fondos públicos, apropiación ilegal agravada; brindar información falsa al Secretario de Transportación y Obras Públicas o a la Policía a sabiendas de que es falsa; proveer falso testimonio durante el curso de una investigación realizada por una agencia federal, en violación a la 18 U.S.C. sec. 1001(a)(2); ayudar e incitar a la distribución de sustancias controladas; perjurio; manipulación de testigos; cometer fraude en un proceso de quiebra; conspiración para cometer fraude postal según tipificado por leyes federales de Estados Unidos; posesión ilegal de material visual que contiene pornografía infantil; infracción a la Sec. 6059 del Código de Rentas Internas de 1994, y en especial violar el Art. 1054(a)1 del Reglamento Núm. 5780 del 3 de abril de 1998 del Departamento de Hacienda, conducta que según este Tribunal Supremo denota "una intención de engañar y defraudar al fisco", según los hechos del caso, "por cinco años consecutivos"; fraude y malversación de fondos públicos y violación al Artículo 3.3 (c) de la Ley de Ética Gubernamental; actos lascivos; y violación a los artículos 2.8 y 3.1 de la Ley Núm. 54 de 15 de agosto de 1989, conocida como *Ley para la Prevención e Intervención con la Violencia Doméstica*, delitos que implican incumplimiento con órdenes de protección y maltrato. Steidel Figueroa, *op. cit.*, págs. 431-434.